[No. B016833. Second Dist., Div. Two. July 31, 1986.]

JEAN EDWARD CARREY, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Henry G. Ullerich and Marilyn K. Mayer, Deputy Attorneys General, for Defendant and Appellant.

Robert E. Courtney and A. William Bartz, Jr., for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.**—The Department of Motor Vehicles (DMV) appeals from a superior court judgment granting a peremptory writ of mandate, setting aside the department's six-month suspension of Jean Carrey's driving privilege pursuant to Vehicle Code section 13353. The principal issue on appeal is whether Carrey's statement that he would not sign the hospital "consent to blood test" form constitutes a refusal to submit to a chemical test for intoxication. Finding that it does, we reverse the trial court's judgment.

In the afternoon of October 21, 1984, Torrance Police Officers Hill and Kerber arrested Carrey for the felony offenses of drunk driving and hit and run. Carrey is a doctor. Carrey was handcuffed and placed in Officer Hill's police unit. Officer Hill advised Carrey of the "implied consent" law, Vehicle Code section 13353 (now section 23157), as follows: "You are required by state law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. If you refuse to submit to a test or fail to complete a test your driving privilege will be suspended six months or for one year if you have been convicted within the past five years of driving under the influence of an alcoholic beverage or drugs or any combination of these including such a charge reduced to reckless driving. You do not have the right to talk to an attorney or have the attorney present before stating whether you will submit to a test, before deciding which test to take or during the administration of the test chosen. *If you are incapable of*

*completing the test you choose, you must submit to and complete any of the remaining tests or test.* If you refuse to submit to a test the refusal may be used against you in a court of law." (Italics added.)

After a brief period of confused indecision, Carrey requested the blood test, but stated he would take it only at Torrance Memorial Hospital.

Carrey was transported to that hospital and was asked to sign the hospital's "CONSENT TO BLOOD TEST" form. It states: "I, the undersigned, do hereby consent to the withdrawal of a blood sample from my body and so hereby further acknowledge that I have been advised that I have my choice of submitting to a test of either my blood, breath or urine (or, if the purpose of the testing is to determine the drug content of my blood, to a test of either my blood or urine) and that I have selected the blood test. I certify that I am not a person who is afflicted with hemophilia or a person who is afflicted with a heart condition using an anticoagulant under the direction of a physician."

After reading this form, Carrey said "I'm not going to sign that form because I'm taking some medicines that can affect my bleeding."

Officer Kerber circled the portion of the consent form concerning the use of anticoagulant. He told Carrey that because he was taking anticoagulants he could not take a blood test, and would have to choose a breath test or a urine test.[1] Carrey continued to insist on a blood test, refused to take either a breath or urine test, said that the police were wasting everybody's time and that they should "just . . . take his [driver's] license." Shortly thereafter, the officers took Carrey to jail for booking.

Officer Kerber submitted a statement to the DMV that Carrey had refused to submit to or failed to complete a chemical test of his blood, breath or urine after being requested to do so.

On November 9, 1984, the DMV issued an order of suspension to Carrey. This order was stayed when Carrey requested a hearing, which was held on February 11, 1984, before a referee appointed by the department. The referee found: "(1) The officer had reasonable cause to believe [Carrey] had been driving a motor vehicle in violation of section 23152 or 23153 V. C., (2)

---

[1]The officer's conduct was consistent with the mandates of the "Peace Officer's Guide to *Implied Consent Law,*" published by the DMV and California Highway Patrol. The portion on blood tests states: "Section 13353(e) of the V.C. requires an exemption for a person who is a hemophiliac or is afflicted with a heart condition and using an anticoagulant under the direction of a doctor. When the arrestee informs the officer of this condition the subject will be required to submit to and complete one of the alternate tests."

[Carrey was] lawfully arrested, (3) [Carrey was] told [his] driving privilege would be suspended for six or twelve months if [he] refused to submit to, or failed to complete, a chemical test, (4) [Carrey] refused to submit to, or failed to complete, a chemical test of your blood, breath, or urine after being requested to do so by the officer." The referee concluded, "Referee believes that the respondent had been adequately admonished and that there was a refusal . . . . Respondent is a medical doctor who knows that he is taken [*sic*] anticoagulent [*sic*] medication for a heart condition and deliberately selected a test that he knows is detrimental to his health due to the fact that he is taken [*sic*] medication to thin out his blood. *He subsequently refused to sign the blood test consent form when he read the part about the anticoagulent [sic] medication which exempts him from taken [sic] the blood test. Respondent was offered the remaining test of breath or urine which he refused. His testimony on this point that he was never offered the remaining test is not believable as it is inconceivable that the officers would not offer the remaining tests, knowing that the doctor is exempt from the blood test.*" (Italics added.) The DMV suspended Carrey's driving privilege.

On April 2, 1985, Carrey filed a petition for administrative mandamus in the superior court to which the DMV responded. Ultimately the court issued its statement of decision, which stated in part:

"It is uncontradicted from the record that petitioner did not refuse the blood test and that it was the police officer who told him he could not take the blood test because he was taking an anticoagulant.

"Respondent contends that because petitioner was taking an anticoagulant, petitioner selected a test that he could not take and therefore was incapable of completing the blood test and pursuant to Vehicle Code section 13353 (2) (A) had to complete either a breath test or urine test. Respondent also asserts that since petitioner was taking an anticoagulant, petitioner was ineligible to take the blood test. However, as the court reads the statute (13353 (e)) which grants an exemption from a blood test '*required*' by this section to a person afflicted with a heart condition and using an anticoagulant under the direction of a physician the option whether to take the blood test is given to the driver and not the police officer. In other words, Section 13353 (e) c.v.c. grants the driver an exemption from the blood test because he is using an anticoagulant, however does not make the driver ineligible if he wishes to take a blood test.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"It is clear that the petitioner insisted on taking a blood test and that the police officer made the decision that he could not take the blood test. In the court's opinion this is not a refusal on behalf of petitioner."

The superior court issued the writ of mandate forbidding the DMV from suspending Carrey's driving privilege. This appeal by DMV followed.

■ In reviewing the administrative record the trial court is authorized to exercise its independent judgment on the evidence. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 394 [188 Cal.Rptr. 891, 657 P.2d 383].) Generally on appeal the trial court's findings must be upheld if supported by substantial evidence. (*Thompson* v. *Department of Motor Vehicles* (1980) 107 Cal.App.3d 354, 358 [165 Cal.Rptr. 626].) However, this rule has no application when, as here, the facts are essentially undisputed and the issue is a question of law.[2]

■ Under former Vehicle Code section 13353 (now section 23157) a person arrested for driving under the influence of alcohol must submit to a test to determine the alcohol content of his blood. The choice of assaying the arrestee's blood, breath, or urine lies with the arrestee. However, the arrestee does not satisfy his obligation simply by choosing one of the three tests; he must go on to complete that test. (*Cahall* v. *Department of Motor Vehicles* (1971) 16 Cal.App.3d 491, 495 [94 Cal.Rptr. 182].) If he cannot complete his chosen test, he must choose and complete another. (*Id.*, at p. 496.)

If the driver refuses to complete one of the three tests, his driving privilege is subject to suspension. ■ There is a strong public policy against the nightmare of drunk driving. Thus, the implied consent law should be liberally construed to effect its purpose, which is to swiftly and accurately identify drunk drivers. (*Ormonde* v. *Department of Motor Vehicles* (1981) 117 Cal.App.3d 889, 893 [173 Cal.Rptr. 79].)

Consequently, the driver should clearly and unambiguously manifest the consent required by the law. Consent which is not clear and unambiguous may be deemed a refusal. The determinative factor as to whether there is a refusal is not the arrestee's subjective state of mind, but rather the objective, fair meaning to be distilled from his words and conduct. (*Barrie* v. *Alexis* (1984) 151 Cal.App.3d 1157, 1161 [199 Cal.Rptr. 258].) A qualified or

---

[2]In this regard, the superior court concurred with the referee's factual finding that the officers did offer Carrey a breath or urine test after Carrey refused to sign the blood test consent form. Thus, the only disputed issue is legal, to wit, was Carrey's refusal to sign the form a refusal to take a test?

conditional consent is a refusal. (*Cole* v. *Department of Motor Vehicles* (1983) 139 Cal.App.3d 870, 873 [189 Cal.Rptr. 249].)

In the case at bench, Carrey reviewed the form entitled "Consent to Blood Test" and stated he would not sign it. As has been noted, "[t]he hospital's consent-form condition is wholly reasonable: The crux of the form is an acknowledgement that the driver has been advised of his choice of tests and that he is *not* physically incapable of taking the test. The form represents a sensible precaution from the hospital's standpoint and imposes no significant additional onus on the driver." (*Butler* v. *Department of Motor Vehicles* (1981) 115 Cal.App.3d 913, 916 [171 Cal.Rptr. 525], italics in original.)[3] Hence, Carrey's refusal to sign the medical consent form was the pragmatic equivalent of a refusal to consent to the procedure involved. Carrey's purported willingness to take the blood test was meaningless in absence of his signature on the form. To accept Carrey's argument would permit him to play fast and loose with the implied consent law. Surely from his own experience as a doctor, he knew the hospital would not draw blood from an arrestee who not only refuses to sign the consent form but affirmatively discloses he is taking anticoagulants. At that juncture, it was incumbent upon Carrey to select and submit to one of the remaining chemical tests as had been requested by the arresting officer. This Carrey failed to do. The DMV properly revoked his driver's license.

The judgment is reversed.

Beach, J., and Gates, J., concurred.

A petition for a rehearing was denied August 20, 1986, and respondent's petition for review by the Supreme Court was denied October 23, 1986.

---

[3]We note that subdivision (b) of Vehicle Code section 23157 also exempts hemophiliacs from taking the blood test.