[No. B050583. Second Dist., Div. Three. Mar. 8, 1991.]

CRYSTAL M. ADLER, Petitioner and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Respondent.

COUNSEL

Gibson, Dunn & Crutcher and Michael J. Keliher for Petitioner and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Henry G. Ullerich and Thomas Scheerer, Deputy Attorneys General, for Respondent.

OPINION

HINZ, J.—

INTRODUCTION

We affirm the trial court's judgment denying a petition for mandamus following the Department of Motor Vehicle's suspension of petitioner's driving license for failure to comply with the Financial Responsibility Law.

Respondent Department of Motor Vehicles (DMV) held a hearing on December 5, 1989, before a referee concerning the suspension of the driving privilege of petitioner and appellant Crystal M. Adler under California Vehicle Code sections 16070[1] and 16071.

On December 8, 1989, the referee's notice of findings and decision found that Adler was the driver or owner of a vehicle involved in an accident on May 15, 1989; that the accident resulted in property damage over $500 or bodily injury or death; and that Adler had not established that financial

---

[1] Section 16070, subdivision (a), states: "Whenever a driver involved in an accident described in Section 16000 fails to prove the existence of financial responsibility as required by Section 16020 at the time of the accident, the department shall pursuant to subdivision (b) suspend the privilege of the driver or owner to drive a motor vehicle, including the driving privilege of a nonresident in this state." Subdivision (b) sets forth procedures under which the DMV mails a notice of intent to suspend the driver's license of a driver when the department receives an accident report alleging that any of the drivers involved in the accident was not in compliance with section 16020 at the time of the accident.

At the time of the hearing, section 16000 stated in part: "The driver of every motor vehicle which is in any manner involved in an accident originating from the operation of a motor vehicle on any street or highway which accident has resulted in damage to the property of any one person in excess of five hundred dollars ($500) or in bodily injury or in the death of any person shall within 10 days after the accident, report the accident on a form approved by the department to the office of the department at Sacramento, subject to the provisions of this chapter."

All statutes refer to the California Vehicle Code unless otherwise stated.

responsibility covered the driver for the vehicle involved in the accident. The decision suspended Adler's driving privilege under section 16070 effective December 12, 1989, although it allowed her to drive to and from work and to regain her unrestricted privilege after December 11, 1990. The referee appended factual comments.

In Los Angeles County Superior Court, on January 12, 1990, Adler filed a petition seeking a peremptory writ of mandate directing the DMV to set aside its January 4, 1990, order revoking her driver's license, to reinstate that license as it existed before the order, and to remove from her driving record any reference to the May 15, 1989, incident.

The trial court filed a judgment denying the writ of mandate on March 5, 1990, dissolving a stay order previously issued, and awarding costs under Government Code section 6103.5 against petitioner Adler. A notice of entry of judgment was filed April 25, 1990.

Adler filed a notice of appeal May 25, 1990. On July 27, 1990, this court granted Adler's petition for writ of supersedeas staying the suspension of her license.

### FACTS

Susan Fortune was the only witness at the hearing; Crystal Adler attended but did not testify.

As the hearing commenced, the referee stated the issues to be: (1) whether Adler was the driver of a motor vehicle involved in an accident on May 15, 1989; (2) whether the accident caused property damage in excess of $500 and whether there was any bodily injury or death; and (3) whether the driver or owner has established that one of the acceptable types of financial responsibility was in effect for the vehicle at the time of the accident.

At about 11 a.m. on Monday, May 15, 1989, Fortune rode her bicycle westbound down Nob Hill in Redondo Beach, three or four feet from cars parked along the street. Her husband was riding behind her. Fortune characterized her habits while bicycling as "very cautious" and "very careful," and she watched parked cars. She thought Adler, the occupant of one of the parked cars, had leaned down in a position where Fortune could not see her. The vehicle's engine was off. The car appeared to her to be legally parked. Fortune had ridden on that street for only a couple of minutes.

As Fortune cycled near, Adler pushed the car door open. The door's outside edge hit Fortune on her arm and her ankle, and threw her 10 to 15

feet into the middle of the street. She landed hard on her left side. Her ankle was bleeding and her arm hurt badly. Adler came over and asked Fortune if she wanted to come inside, and appeared concerned about the accident.

Fortune's husband helped her to her feet and rode to their home a few blocks away, returned by car, and took Fortune to a doctor. Fortune had a large bruise on her upper arm and her ankle was bleeding. She had X-rays for a bad pain in her head, felt disoriented, and had difficulty walking. At the time of the hearing she was still receiving chiropractic adjustments three times a week. She had a scar from the bruise and a big dent in her arm, and wore a neck brace because she could not lift her head up or move as a result of the accident. She felt back pain in several spots 24 hours a day, migraine headaches, blurred vision in her left eye, numbness in her left side, tingling and pain, and semiloss of motor skills in her left hand. Fortune identified several photographs of her injuries.

Fortune called the police the next day and told them what happened.

The referee's comments included a finding that although Fortune had not observed the vehicle being moved before the car door opened into her, Adler was exiting from the driver's side. The referee stated that "therefore, this vehicle was not yet considered legally parked. There is also a presumption the vehicle had been driven prior to this incident." The referee found that a "[p]reponderance of evidence warrants positive findings to the injury and driving issues, and is not exempt from this action. Suspension should be reimposed."

In denying the petition for writ of mandate, the trial court ruled that a cyclist's collision with the open door of Adler's parked vehicle constituted an accident within the meaning of section 16000. Adler's throwing open of the car door in the cyclist's path constituted operation of a vehicle within section 16000. Adler was in physical control of the vehicle, and was therefore the driver within sections 305 and 16000. The trial court found that the administrative hearing transcript contained sufficient evidence that Fortune sustained bodily injury as a result of the accident.

### ISSUES

Petitioner on appeal claims that:

1. Her constitutional due process right was violated because the DMV hearing was not fair; and that

2. A person exiting a parked vehicle is not a driver operating a motor vehicle.

## DISCUSSION

■ Adler on appeal claims that the DMV and the superior court denied her a fair hearing by unlawfully placing the burden of proof on her. Adler cites *Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536 [189 Cal.Rptr. 512, 658 P.2d 1313]: "When an administrative agency initiates an action to suspend or revoke a license, the burden of proving the facts necessary to support the action rests with the agency making the allegation. Until the agency has met its burden of going forward with the evidence necessary to sustain a finding, the licensee has no duty to rebut the allegations or otherwise respond. [Citations.]"

*Daniels,* however, simply held that when the licensee requests a hearing, the use of an accident report filed pursuant to section 16000, without additional evidence, will not suffice to support the suspension of a driver's license in a formal DMV hearing. (33 Cal.3d at p. 536.) The *Daniels* opinion discussed why, because such an accident report was hearsay, it thus precluded the DMV's exclusive reliance on an accident report in suspending a license under the Financial Responsibility Law.

In the case at bench, by contrast, the referee did not rely exclusively on a hearsay accident report. Fortune, the accident victim, testified at the hearing. Petitioner also had ample opportunity to cross-examine Fortune. (See *Daniels, supra,* at p. 540.) *Daniels* thus does not invalidate the hearing in the case at bench on due process grounds.

■■ The question in this appeal is not due process, but whether the evidence was sufficient to shift the burden of rebutting the allegations and sufficient to support the suspension of Adler's license. We believe that it was. Petitioner, as the complaining party, had the burden of convincing the superior court that the administrative decision was contrary to the weight of the evidence, and the superior court, as it was obligated to do, exercised its independent judgment on the administrative record. (*Hughes* v. *Alexis* (1985) 170 Cal.App.3d 800, 806 [216 Cal.Rptr. 550].) ■ On appeal, the trial court's findings must be upheld if supported by substantial evidence, unless undisputed facts make the issue a question of law. (*Carrey* v. *Department of Motor Vehicles* (1986) 183 Cal.App.3d 1265, 1270 [228 Cal.Rptr. 705].)

■ On several issues, Adler claims that evidence is insufficient, even though she offered no evidence to rebut or respond to the DMV's allegations in the administrative hearing. Adler argues, for instance, that there was no evidence that she was the "driver" of the vehicle as defined by the Vehicle Code, asserting that at the time of the accident she was exiting the

vehicle, not driving it. Adler specifically objects to the hearing officer's "*presumption the vehicle had been driven prior to this incident.*"

Section 305 states in part: "A 'driver' is a person who drives *or is in actual physical control of a vehicle.*" (Italics added.) The statute makes no mention of whether the vehicle's engine is on or whether the vehicle is parked, stopped, or in motion. Indeed, even a person standing outside the car, trying to push it into a position so he could start it using another vehicle, was nevertheless "engaged in driving or operating" that car. "Under Vehicle Code section 305 . . . plaintiff was *a* driver of the Comet at the time of the collision even though at that precise time he was not actually exercising such control. [Citations.]" (*Arellano* v. *Moreno* (1973) 33 Cal.App.3d 877, 882-883 [109 Cal.Rptr. 421], italic in original.)

The statute's alternative phrasing distinguishes between "driving" the vehicle and being "in actual physical control" of the vehicle. The evidence indicates that although her car was parked with its engine off, Adler nonetheless retained "actual physical control" of the vehicle. She certainly exerted physical control of the car door involved in the accident. The evidence, which Adler permitted to remain unrebutted in the hearing, supports the conclusion under section 305 that she was the driver of the vehicle.

Section 16070, subdivision (a) states that the DMV shall suspend the driving privilege of the "driver or owner" whenever "a driver involved in an accident described in Section 16000 fails to prove the existence of financial responsibility as required by Section 16020 at the time of the accident . . . ." Section 16000 refers to "[t]he driver of every motor vehicle which is *in any manner* involved in an accident originating from the operation of a motor vehicle on any street or highway which accident has resulted" in specified damage, death, or injury. The emphasized phrase, "in any manner," indicates the Legislature's intent to include accidents of the type that occurred in the case at bench.

Section 16020, subdivision (a), states the purpose of the Financial Responsibility Law in similarly inclusive language: "*Every* driver and *every* owner of a motor vehicle shall *at all times* maintain in force one of the forms of financial responsibility specified in Section 16021, and shall *at all times* carry in the vehicle evidence of the form of financial responsibility in effect for the vehicle." (Italics added.) "Every driver" necessarily includes petitioner, and "at all times" likewise includes that period of time when she opens a car door.

Petitioner argues that in sections 16000 and 16070, the Legislature drew clear-cut lines by imposing reporting requirements on "drivers" rather than

on "persons." As we have seen, however, the statutory scheme identifies petitioner as a driver. Petitioner further argues that the Legislature could have chosen to place liability on persons for accidents originating from "any contact" with a motor vehicle. ■ The purpose of the Financial Responsibility Law, however, is not to establish liability. Instead, it imposes a duty on all drivers to be financially responsible so as to give monetary protection to persons lawfully using the highways who suffer grave injury through negligent use of those highways by others. (*Bennett* v. *Bodily* (1989) 211 Cal.App.3d 133, 138 [259 Cal.Rptr. 199]; *Anacker* v. *Sillas* (1976) 65 Cal.App.3d 416, 422 [135 Cal.Rptr. 537].) ■ Section 22517 states that no person shall open the door of a vehicle on the side available to moving traffic unless it is reasonably safe to do so. The sanction imposed, supported by the facts of the case at bench, conforms to the legislative intent.

We affirm the trial court's judgment denying writ of mandate.

### DISPOSITION

The judgment denying writ of mandate is affirmed; the petition for writ of supersedeas is vacated and the stay terminated.

Danielson, Acting P. J., and Croskey, J., concurred.