[No. B054281. Second Dist., Div. Three. Apr. 8, 1992.]

ALFRED LARUE DAVENPORT, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

COUNSEL

Philip A. Rafferty and Owen P. Rafferty for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, N. Eugene Hill, Assistant Attorney General, Henry G. Ullerich and Martin H. Milas, Deputy Attorneys General, for Defendant and Respondent.

OPINION

CROSKEY, J.—Alfred Larue Davenport appeals from the denial by the superior court of his petition under Vehicle Code section 13559 to set aside the order of the Department of Motor Vehicles (Department) suspending Davenport's driving privileges for four months under sections 13353.2 and 13353.3, subdivision (b)(1) and requiring a license reinstatement fee and proof of financial responsibility under section 13353.4, for driving a vehicle when he had more than .10 percent by weight of alcohol in his blood.[1]

[1]Unless otherwise noted, all statutory references are to the Vehicle Code.

Together, sections 13557, 13558, 13559, and 14105.5 provide for a series of reviews and hearings which are afforded a licensee whose driving privileges are suspended under the "administrative per se" procedures which went into effect on July 1, 1990. (Stats. 1989, ch. 1460.)

As originally enacted, section 13353.2 provided that a peace officer shall immediately suspend the license of a person who was driving or in actual physical control of a vehicle when the person had a .10 percent or more by weight of alcohol in his or her blood. Effective July 26, 1990, 11 days after Davenport's arrest, that section was amended to provide for suspension if the blood alcohol were .08 percent. Section 13353, subdivision (a) provides that the suspension provided in section 13353.2 is effective 45 days after service of the notice of suspension. Section 13353.3, subdivision (b)(1) provides that the suspension is for four months if the person has not previously been civilly or criminally penalized for offenses involving driving under the influence of alcohol.

Section 13557 provides that the Department shall review the determination made under section 13353.2 by the peace officer. Section 13558 provides that the licensee is entitled to a formal or informal hearing on the matter upon request, and that the hearing shall take place before the effective date of the suspension if the request is postmarked within ten days after service of the notice of suspension. Section 14105.5 entitles the licensee to an administrative review of the decision reached at an informal hearing.

Section 13559, the section under which the order here appealed from was issued, entitles the licensee to a judicial review of the Department's decision. It provides in relevant part as follows:

"(a)   Notwithstanding section 14400 or 14401, within 30 days of the issuance of the notice of determination of the department sustaining an order of suspension of the person's privilege to operate a motor vehicle after the hearing pursuant to Section 13558, the person may file a petition for review of the order in the court of competent jurisdiction in the person's county of residence. The filing of a petition for judicial review shall not stay the order of suspension

The central issue of the appeal is whether the Department can rely upon the rebuttable presumption contained in Evidence Code section 664 to satisfy its burden of proof at a hearing under section 13558 as to the reliability of chemical test results offered to prove the licensee was driving with a blood-alcohol concentration that violated section 13353.2.

We conclude that the Department may rely on that presumption to show that such test results were obtained in compliance with statutory and regulatory requirements. This presumption affects the burden of proof (Evid. Code, § 660) and in the absence of contradictory evidence is alone sufficient to support a finding. Indeed, under Evidence Code section 606, the licensee has the burden of proof of demonstrating that there was an official failure to comply with applicable statutory and regulatory requirements. We further conclude that due process is not offended by this allocation of the burden in license suspension proceedings.

Based upon the foregoing conclusions, we find that the order of suspension in this case was supported by substantial evidence, and we therefore affirm. (*Adler* v. *Department of Motor Vehicles* (1991) 228 Cal.App.3d 252, 257 [279 Cal.Rptr. 28]; *Carrey* v. *Department of Motor Vehicles* (1986) 183 Cal.App.3d 1265, 1270 [228 Cal.Rptr. 705].)

### FACTUAL AND PROCEDURAL BACKGROUND

At approximately 10:30 p.m. on July 15, 1990, in the city of Newport Beach, California, Davenport was observed making a lane change from the number three to the number one lane on Jamboree Road near Backbay Drive, forcing other vehicles in lanes one and two to stop. When stopped, Davenport, the sole occupant of the car, was observed to have bloodshot, watery eyes, an unsteady gait, slurred speech, and an odor of alcohol on his breath. He was arrested on suspicion of driving under the influence of alcohol (§ 23152, subd. (a)) and driving with a blood-alcohol concentration (BAC) of .10 percent or greater (former § 23152, subd. (b)). Davenport submitted to a breath-to-blood-alcohol test, which indicated a BAC of .15 percent in each of two samples taken. The arresting officer thus confiscated Davenport's

---

or revocation. The review shall be on the record of the hearing and the court shall not consider other evidence. If the court finds that the department exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a determination which is not supported by the evidence in the record, the court may order the department to rescind the order of suspension or revocation and return, or reissue a new license to, the person."

Section 13353.4 provides that a license suspended under section 13353.2 shall not be restored until reinstatement fees, as fully set forth in section 14905, are paid and until proof of financial responsibility, as defined in section 16430, is provided. Davenport was ordered to pay a reinstatement fee of $100.

driver's license, issued him a 45-day temporary license, and served him with a notice of suspension of driving privileges, effective in 45 days. As required by section 13353.2, subdivision (c), the officer informed Davenport of his right to a hearing on the suspension and of the procedure for requesting a hearing.

Davenport requested a hearing under section 13558, and an informal hearing was held on August 7, 1990. At the hearing, over Davenport's objection, the hearing officer took official notice of the Department's records in the case, including the arresting officer's sworn statement (hereafter, 367 report), submitted on form DL 367, the Department's official form for such statements.[2] Davenport objected to the 367 report being relied upon at the hearing, because the document failed to establish that the breath test given to him was given in a correct manner, that the machine used for the test was operating properly, or that the officer who administered the test was properly trained.

Davenport testified that he weighed 160 pounds. On the night of July 15, he began drinking at approximately 7:30 p.m., consumed 12 to 14 ounces of red wine with dinner, and had his last drink at approximately 10 p.m., about a half hour before his arrest. Darryl Clarity, a forensic toxicologist called as a witness by Davenport, testified that if a person with Davenport's body weight drank according to the pattern Davenport described in his testimony, his BAC would be between .02 and .06 percent if properly measured one to three hours later on a properly functioning machine.

Based upon the 367 report and upon the testimony of Davenport and his expert witness, the hearing officer found the license suspension proper. The hearing officer's findings and the order of suspension were sustained after an administrative review. Davenport then petitioned for judicial review under section 13559. He contended the Department's findings were not supported by substantial evidence, because there had been no evidence establishing the reliability of the breath-to-blood-alcohol test results that were admitted into evidence at the administrative hearing.

The trial court concluded that in a hearing under section 13558, the hearing officer is authorized by the statute to rely upon the arresting officer's 367 report, absent a showing by the licensee that the statement or the scientific test upon which the statement is based is unreliable. The court

[2]Section 23158.2, subdivision (b) requires the Department to furnish or approve forms for the sworn reports of information required by section 23158.2, subdivision (a), which information is relevant to license suspensions under section 23158.5. The form furnished pursuant to the statute is entitled "DL-367."

further found that reliance upon the 367 report does not violate due process requirements. Independently reviewing the evidence presented at the hearing, the court found the sworn 367 report sufficient to support the order suspending Davenport's driving privileges. The court thus denied the petition to set aside the order. This appeal followed.

## CONTENTIONS ON APPEAL

Davenport contends the order suspending his driving privilege was not supported by substantial evidence, because no evidence was presented at the administrative hearing which established the scientific reliability of the officer's statement that he had a BAC of .15 percent. Davenport further contends that sections 13353.2, 13558, and related statutes violate the due process requirements of the United States and California Constitutions, because these statutes allow driving privileges to be suspended on the basis of legally insufficient evidence.

## DISCUSSION

1. *At a Hearing Under Section 13558, There Is a Rebuttable Presumption Under Section 664 of the Evidence Code That Chemical Tests, the Results of Which Are Offered Into Evidence, Were Administered in Compliance With Statutory and Regulatory Requirements.*

■ Although a driver's license is a protectible property interest, the state may under certain conditions, such as drunk driving, resort to summary suspension proceedings to regulate the use of the driving privilege and to protect the public against its abuse. (*Mackey* v. *Montrym*, (1979) 443 U.S. 1, 19 [61 L.Ed.2d 321, 335, 99 S.Ct. 2612]; *Mackler* v. *Alexis*, (1982) 130 Cal.App.3d 44, 58 [181 Cal.Rptr. 613].) However, the interests justifying summary proceedings are not so great as to allow the suspension of a license absent a showing by substantial competent evidence of facts supporting the suspension. (*Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536 [189 Cal.Rptr. 512, 658 P.2d 1313]; *Carlton* v. *Department of Motor Vehicles* (1988) 203 Cal.App.3d 1428, 1432 [250 Cal.Rptr. 809].)

■ In proceedings to suspend or revoke a driver's license, the facts necessary to justify suspension can be established by the use of the sworn statement of the arresting officer, attesting to matters within the officer's personal knowledge, even though the officer does not personally appear and the licensee offers contrary proof. (Evid. Code, § 1280; *Scott* v. *Pierce* (1990) 221 Cal.App.3d 654, 656 [271 Cal.Rptr. 9]; *Snelgrove* v. *Department of Motor Vehicles* (1987) 194 Cal.App.3d 1364, 1366 [240 Cal.Rptr. 281];

*Fisk* v. *Department of Motor Vehicles* (1981) 127 Cal.App.3d 72, 79 [179 Cal.Rptr. 379, 31 A.L.R.4th 905].) However, it does not necessarily follow from the mere fact that the officer's sworn statement is admissible and competent evidence under an exception to the hearsay rule that every matter in the sworn statement is admissible and legally sufficient to support a finding. Each matter sworn to must itself be supported by an adequate foundation of personal knowledge by the officer and any other appropriate guarantee of reliability, or that matter is not admissible and cannot be relied upon. (*Daniels* v. *Department of Motor Vehicles, supra,* 33 Cal.3d at pp. 536-537; *Carlton* v. *Department of Motor Vehicle, supra,* 203 Cal.App.3d 1428, 1434; *Hoel* v. *City of Los Angeles* (1955) 136 Cal.App.2d 295, 309-310 [288 P.2d 989].)

An officer's sworn statement that, when tested, a licensee's BAC was at a particular level is admissible, legally sufficient evidence that the BAC was indeed at that level if and only if there is a basis for believing that the test which measured blood alcohol was reliable. In general, the foundational requirements for establishing the reliability of test results consist of a showing that (1) the apparatus utilized was in proper working order, (2) the test used was properly administered, and (3) the operator was competent and qualified. (*People* v. *Adams* (1976) 59 Cal.App.3d 559, 561 [131 Cal.Rptr. 190].)

Here, it is uncontroverted that no evidence establishing the reliability of the breath test administered to Davenport was adduced at the license suspension hearing. On the other hand, Davenport presented no evidence that the test was not reliable, either by cross-examining the officer as to his qualifications, his manner of administering the test, and the condition of the machine, or by offering his own evidence on any of those matters. Davenport did testify that he consumed twelve to fourteen ounces of wine with dinner, over a period of two and one-half to three hours on the night of his arrest, a drinking pattern, which, according to his expert witness, would produce a BAC substantially less than .10 percent if properly tested within one to three hours after Davenport stopped drinking.

■ Davenport contends that under the foregoing state of the evidence, evidence of the breath test results was not reliable or competent. Consequently, the officer's statement was legally insufficient to contradict Davenport's evidence that he *could not* have had a BAC of .15 percent shortly after his arrest.

A *similar* contention was addressed by the First District of the Court of Appeal in the recent case of *Imachi* v. *Department of Motor Vehicles* (1992)

2 Cal.App.4th 809 [3 Cal.Rptr.2d 478]. In that case, the Court of Appeal concluded that the presumption of official duty regularly performed (Evid. Code, § 664) supplies sufficient indicia of the trustworthiness of blood-alcohol test results to justify reliance upon such results to support a license suspension, subject to a showing by the licensee that the test was not performed in compliance with statutory requirements. (2 Cal.App.4th at p. 815.) We agree with the reasoning and the conclusion of the *Imachi* court.[3]

Evidence Code section 664 provides: "It is presumed that official duty has been regularly performed." The presumption does not apply on an issue as to the lawfulness of a warrantless arrest (§ 664), but it does otherwise apply generally to police officers. (*Fisk* v. *Department of Motor Vehicles, supra,* 127 Cal.App.3d at p. 77; *August* v. *Department of Motor Vehicles* (1968) 264 Cal.App.2d 52, 65 [70 Cal.Rptr. 172].)

An "official duty" is imposed upon law enforcement agencies and their officers and employees under section 436.52 of the Health and Safety Code and regulations promulgated thereunder to perform blood-alcohol analyses by methods devised to assure reliability.[4] Section 436.52 provides: "The testing of breath samples by or for law enforcement agencies for purposes of

---

[3]In *Imachi*, two grounds for reversal were urged—the ground urged here, and the additional ground that reliance in that case upon a supplemental 367A report violated Government Code Section 11513, subdivision (c), which provides in pertinent part as follows: "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. . . ." Although the Court of Appeal found the presumption of Evidence Code section 664 supplies sufficient indicia of the reliability of test results reported on form 367A (2 Cal.App.4th at pp. 816-817), such results are admissible over a hearsay objection *only if reported by the test analyst, who reports firsthand observations.* (*Id.* at p. 817.) It was established by the record in *Imachi* that the test results challenged in that case were not reported by the analyst, but by the arresting officer, who merely attested that he *reviewed* the results. (*Id.* at p. 812.) Thus, that part of the officer's report which contained his personal observations was admissible and competent evidence, but that part reporting the result of the blood-alcohol test—the sole proof of the licensee's blood-alcohol content—was inadmissible hearsay. (*Id.* at p. 816.) The superior court was thus directed to grant Imachi's petition for a writ of mandate and to issue a peremptory writ commanding the Department to set aside the license suspension.

In this case, we have no information whether the breath test results were directly observed by the officer who submitted the 367 report. However, no objection to the results on hearsay grounds was raised in the trial court. Indeed, Davenport conceded in his petition under section 13559 that the results "were legally admitted into evidence." Any objection to the results on hearsay grounds was thus waived. (*People* v. *Benson* (1990) 52 Cal.3d 754, 786, fn. 7 [276 Cal.Rptr. 827, 802 P.2d 330]; *People* v. *Rogers* (1978) 21 Cal.3d 542, 548 [146 Cal.Rptr. 732, 579 P.2d 1048].)

[4]Davenport is mistaken in his assertion that a police officer has no duty to administer a blood-alcohol test to a person arrested upon reasonable suspicion of driving under the influence of alcohol. Section 23157 provides, first, that every person who drives a motor vehicle is deemed to have consented to blood-alcohol testing, and next provides: "The testing

determining the concentration of ethyl alcohol in the blood of persons involved in traffic accidents or in traffic violations shall be performed in accordance with regulations adopted by the State Department of Health Services. [¶] The rules and regulations shall establish the procedures to be used by law enforcement agencies in administering breath tests for the purposes of determining the concentrations of ethyl alcohol in a person's blood. . . ." The "shall" wording of the statutes makes clear that the procedures established by the rules are to be mandatory and that compliance constitutes a duty imposed upon the agencies and individual officers and civilian employees who administer, analyze, and report the tests.

Pursuant to section Health and Safety Code 436.52, *supra*, the Department of Health Services has promulgated regulations for forensic alcohol analysis in sections 1215 through 1222.2 of title 17 of the California Code of Regulations (group 8 of subch. 1 of ch. 2, regarding laboratories). The rules set detailed standards for the licensing and operation of forensic alcohol laboratories, the training of personnel, the collection and analysis of samples in general, and the manner of expressing results. (§§ 1215-1220.4) Article 7 of the rules (§§ 1221-1221.5) comprises the requirements for breath alcohol analysis, including standards for procedures (§§ 1221.1, 1221.4), standards for instrument performance (§ 1221.2), and approved instruments (§ 1221.3).

The foregoing regulations establish a standard for the competency of the results of blood-alcohol tests. (*People* v. *Adams*, *supra*, 59 Cal.App.3 at p. 567.) Compliance with the regulations establishes both a foundation for admission of test results into evidence in any proceeding and a basis for finding such results to be legally sufficient evidence to support the requisite findings in such proceeding. (*Ibid.*)

The presumption that blood-alcohol test results reported in a 367 report were obtained in compliance with governing statutes and regulations complements the presumption which supports admission of the report as a whole

shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of Section 23152 or 23153." Such language plainly requires the officer to administer the test or have it administered by another. Language quoted by Davenport from *Brown* v. *Municipal Court* (1978) 86 Cal.App.3d 357 [150 Cal.Rptr. 216] to the effect that "there is no duty or obligation on law enforcement officers to administer a blood test" (86 Cal.App.3d at p. 361) is taken out of context and in no way supports Davenport's argument. The issue in *Brown* was whether an officer who has *already* administered one chemical test (a breath test in that case), as required by statute, is obligated to procure an additional and different chemical test at the licensee's request. (*Id.* at pp. 360-361.) The Court of Appeal concluded that although no such obligation exists, the officer violates due process if he frustrates the licensee's efforts to obtain a timely sample of his blood, with which to impeach the results of the initial test. (*Id.* at pp. 362-363.)

under section 1280 of the Evidence Code, the "official records" exception to the hearsay rule. Section 1280, subdivision (c) requires that the source of information and the method and time of preparation of writings admitted into evidence under section 1280 bear indicia of trustworthiness. In reliance upon the Evidence Code section 664 presumption of regular performance of official duty, the courts have found this "trustworthiness" requirement to be fulfilled if the writing is based upon the direct observations of a public employee who has a duty to observe the facts and report and record them correctly. (*Snelgrove* v. *Department of Motor Vehicles, supra,* 194 Cal.App.3d at p. 1375; *Fisk* v. *Department of Motor Vehicles, supra,* 127 Cal.App.3d at p. 77.) Specifically, where it is established that the matters reported are the direct observations and within the personal knowledge of the reporting officer, a sworn 367 report introduced at a hearing under section 13558 is presumed trustworthy, based upon the officer's duty under sections 13353 and 23158.2 to report the facts of an arrest for drunk driving and an incident blood-alcohol test. (*Ibid.* See also *Imachi* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at pp. 814-815.)

The presumption in Evidence Code section 664 affects the burden of proof. (Evid. Code, § 660.) Thus, section 664 effectively places upon the licensee against whom a 367 report is offered the burden of proof as to the nonexistence of the foundational trustworthiness of the report as a whole, and in particular, the nonexistence of the foundational reliability of tests upon which the report is partly based. (Evid. Code, § 606. Cf. *Snelgrove* v. *Department of Motor Vehicles, supra,* 194 Cal.App.3d at p. 1375; *Fisk* v. *Department of Motor Vehicles, supra,* 127 Cal.App.3d at p. 78.) If it is established that all matters in a 367 report are the direct observations and within the personal knowledge of the reporting officer, the 367 report, including the results of blood tests administered by the officer, constitutes sufficient evidence to support findings justifying suspension of the licensee's driving privilege.[5]

*2. Due Process Is Not Offended by Placing Upon the Licensee the Burden of Rebutting the Reliability of Chemical Tests.*

■  When the state acts to deprive a citizen of a protectible property right, thus triggering due process protections, the issue of what process is due is determined by balancing the following factors: (1) the private interest

---

[5]In support of his contention that the Department bears the initial burden of establishing the reliability of the blood-alcohol tests, Davenport cites two Utah cases, *Kehl* v. *Schwendiman* (Utah Ct. App. 1987) 735 P.2d 413 and *Harry* v. *Schwendiman* (Utah Ct. App. 1987) 740 P.2d 1344. These decisions are inapposite, for it appears that Utah's statutory scheme for per se license suspensions provides that the reliability of blood alcohol is to be established in suspension proceedings by affidavits. (See *Kehl* v. *Schwendiman, supra,* 735 P.2d at pp. 416-417.) California's statutes governing suspension proceedings contain no such provision.

affected by the official action; (2) the risk of the erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the dignity interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible government official and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. (*In re Malinda S.* (1990) 51 Cal.3d 368, 383 [795 P.2d 1244]; *In re Jackson* (1987) 43 Cal.3d 501, 510-511 [233 Cal.Rptr. 911, 731 P.2d 36].)

■ Applying these considerations to the evidentiary requirements at a hearing under section 13558, we find that due process does not require the Department to have the initial burden of establishing the reliability of chemical tests offered into evidence against the licensee. Although a driver's license is an important interest of the licensee, little risk of an erroneous deprivation of the interest is posed by placing upon the licensee the burden of rebutting the presumed reliability of the test. License suspension proceedings, as should go without saying, are altogether distinct from criminal trials, in which the accused is endowed with an overriding presumption of innocence, and in which a presumption that would have the effect of shifting to the accused the burden of proof on an element of the offense would plainly and egregiously violate due process. (*Sandstrom* v. *Montana* (1979) 442 U.S. 510, 524 [61 L.Ed.2d 39, 51, 99 S.Ct. 2450].)

The burden imposed upon the licensee of rebutting the presumption favoring the reliability of blood-alcohol tests does not entail the marshalling of complex scientific evidence. We emphasize that what is directly presumed is not the actual reliability of the test. Although we have referred, as a convenient shorthand, to "the presumed reliability of the test," what is actually presumed under Evidence Code 664 is *compliance with statutory and regulatory standards*, which in turn gives rise to an inference of reliability. If the licensee shows, through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed, the burden shifts to the Department to prove that the test was reliable despite the violation. (*Coombs* v. *Pierce* (1991) 1 Cal.App.4th 568, 579 [2 Cal.Rptr. 249]; *People* v. *Adams, supra,* 59 Cal.App.3d at p. 567.)

A licensee is not denied the opportunity to challenge the reliability of test results offered against him or her. A licensee who requests a hearing has the right to subpoena the arresting officer and any other persons having knowledge of issues relevant to the suspension, as well as relevant documents

(§ 14104.5; *Snelgrove* v. *Department of Motor Vehicles, supra,* 194 Cal.App.3d at p. 1376), and thus has "[an] opportunity to be heard 'at a meaningful time and in a meaningful manner' " (*Mathews* v. *Eldridge* (1975) 424 U.S. 319, 333 [47 L.Ed.2d. 18, 32, 96 S.Ct. 893]) on the issue of the reliability of the evidence against him.

Finally, balanced against any hardship to the licensee is the urgent public need for an efficient and cost-effective means of removing from the public roadways the menace posed by drunken drivers. We thus conclude that due process is not offended where an officer's sworn report of the results of blood-alcohol tests administered by the officer to a licensee is admitted into evidence and relied upon to find that the licensee was in actual control of a vehicle while having a BAC violative of section 23152, subdivision (b). Nor is due process violated if the licensee's driving privilege is suspended or revoked based upon such finding.

Davenport does not allege he was denied an opportunity to contest the reliability of the test offered against him. Indeed, he made no effort to contest it. Under these circumstances, the hearing officer properly relied upon the statutory presumption that the test was properly administered by a trained officer, using properly functioning equipment. Based upon the presumption, the hearing officer could properly and reasonably conclude that the test results were reliable.

## DISPOSITION

The judgment of the superior court affirmed.

Klein, P. J., and Hinz, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 25, 1992. Panelli, J., was of the opinion that the petition should be granted.