78 Cal.Rptr.2d 385 (1998)
66 Cal.App.4th 907
Jesus CABRAL, Plaintiff and Appellant,
v.
LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY, Defendant and Respondent.
No. B113154.
Court of Appeal, Second District, Division Five.
September 16, 1998.
*386 Joel R. Bander, Los Angeles, and Robert Asa Crook, for Plaintiff and Appellant.
Melanie E. Lomax, Karen G. Sarames, Oakland, Greines, Martin, Stein & Richland, Martin Stein and Carolyn Oill, Beverly Hills, for Defendant and Respondent.
Certified for Partial Publication.[*]
GRIGNON, Acting Presiding Justice.
Plaintiff, an uninsured motorist, brought his car to a stop at the side of a busy city street and parked at the curb, as he was permitted to do. As plaintiff was exiting his car, defendant's bus collided with plaintiffs car, causing property damage and personal injury. Pursuant to Civil Code section 3333.4,[1] the trial court determined plaintiff could not recover non-economic damages, because plaintiff was an uninsured motorist and his damages arose out of the operation or use of a motor vehicle. In the published portion of this opinion, we conclude plaintiffs recovery is limited to his economic damages. In the unpublished portion of this opinion, we reverse the judgment of nonsuit, concluding plaintiff presented sufficient evidence of defendant's negligence.

FACTS[2] AND PROCEDURAL BACKGROUND
On Olympic Boulevard near the site of the accident are three lanes of eastbound traffic. During rush hour, all three lanes are driving lanes and no parking is permitted at the curb. At the time of day when the accident occurred, cars may legally park in the third lane, the lane closest to the curb. On April 20, 1996, plaintiff and appellant Jesus Cabral parked his car on Olympic Boulevard approximately three inches from the curb. He observed in his rearview mirror defendant and respondent Los Angeles County Metropolitan Tranportation Authority's bus in the second lane approximately one block behind him. While still wearing his seat belt and without checking on the position of the bus, plaintiff opened his door approximately five inches. He did not open his door into the middle lane of traffic. The bus collided with the car door near the door handle, pulling plaintiffs arm and body forward. The impact pushed the car forward one foot. Plaintiff immediately felt pain in his hand, arm, back, neck, and shoulder. Plaintiff had not seen the bus between the time it was a block away and the time it hit his door. Moreover, he never saw the bus changing lanes.
Plaintiff got out of his car. Defendant's bus had stopped a block ahead of plaintiffs car, and the bus driver also got out to see what had happened. The rear bus wheel had been damaged. Plaintiff and the bus driver exchanged information. The bus driver apologized and said he had not seen plaintiffs car. The bus driver stated he had been merging into the third lane, the lane in which plaintiff had been legally parked. A photographic exhibit demonstrates that the door of plaintiffs car parked in the curb lane does not extend into the middle lane even when fully opened.
Plaintiff did not have automobile liability insurance.
On September 17, 1996, plaintiff filed a complaint against defendant for negligence. On March 18, 1997, plaintiff filed a motion for a determination of law. Plaintiff contended *387 that Civil Code section 3333.4, which had been enacted after the filing of the complaint, was not applicable. A jury trial commenced on April 21, 1997. Before the trial began, the trial court denied plaintiffs motion for a determination of law and instead found that plaintiff could not recover non-economic damages pursuant to Civil Code section 3333.4.
At the conclusion of plaintiffs presentation of evidence, defendant moved for nonsuit pursuant to Code of Civil Procedure section 581c. The trial court found that since the car door had collided with the rear wheel well of the bus, as opposed to the front of the bus, plaintiffs claim that the bus had encroached on his lane was not credible. In addition, the trial court found that there was insufficient evidence to show that the bus had been driven improperly. The trial court found that the cause of the accident was plaintiffs negligence in violation of Vehicle Code section 22517, which provides that no person shall open the door of a vehicle on the side available to moving traffic unless it is reasonably safe to do so. The trial court granted the motion for nonsuit. On June 13, 1997, the trial court entered judgment in favor of defendant. Plaintiff appealed from the order denying the motion for a determination of law and the order granting nonsuit. We construe the notice of appeal as from the appealable judgment and review the issues on appeal from the judgment.

DISCUSSION

I. Operation or Use

Civil Code section 3333.4 limits the damages of an uninsured motorist injured in an automobile accident to economic losses. Civil Code section 3333.4 provides in pertinent part: "[I]n any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if ... [¶] ... [¶] ... [t]he injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state."[3]
Plaintiff concedes he was the owner of the vehicle involved in the accident and the vehicle was not insured. He contends, however, his damages did not arise out of the "operation" or "use" of the vehicle. He argues the car was parked at the time of the accident and was being neither operated nor used. The statute does not expressly define the terms "operation" or "use." Therefore, we apply the usual rules of statutory construction in interpreting the statute.
"`We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. [Citation.] ... To determine intent, "`The court turns first to the words themselves for the answer.'" [Citations.] "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the [lawmakers]...."' [Citation.] We give the language of the statute its `usual, ordinary import and accord significance, if possible, to every word, phrase and sentence in pursuance of the [lawmakers'] purpose. A *388 construction making some words surplusage our is to be avoided. The words of the statute must be construed in context, keeping in to mind the statutory purpose.... Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the Legislative intent.'" (Kane v. Hurley (1994) 30 Cal.App.4th 859, 862, 35 Cal.Rptr.2d 809.)
On November 5, 1996, Civil Code section 333.4 and its companion, Civil Code section 3333.3,[4] were added by initiative measure Proposition 213 entitled, The Personal Responsibility Act of 1996. This initiative prohibits uninsured motorists and drunk drivers from collecting noneconomic damages vehicle when the person causes the motor in any action arising out of the operation or use of a motor vehicle. Further, it prohibits recovery of any damages by felons for injuries caused in the commission of or flight from a felony. [Citation.] The voter's pamphlet reveals numerous interests the electorate considered in enacting this initiative. Essentially such interests can be narrowed down to two broad concerns the voters took into account: (1) the interest in restoring balance to our justice systems and (2) the interest in reducing costs of mandatory automobile insurance." (Yoshioka v. Superior Court (1997) 58 Cal.App.4th 972, 978, 68 Cal. Rptr.2d 553.) "[T]he interest in restoring balance to our justice system includes such interests [as] decreasing the number of lawsuits reducing annual court-related costs to state and local governments, increasing the costs of drunk driving and disobeying California's Financial Responsibility Law, curtailing commission of felonies and avoiding unreasonable damages being awarded to the uninsured. The interest in reducing costs of mandatory automobile insurance addresses the need to reduce skyrocketing insurance premiums by encouraging motorists to buy liability insurance." (Id. at p. 984, 68 Cal. Rptr.2d 553.) "In the wake of an insurance premium crisis, the electorate's interests in controlling the high costs of insurance are significant." (Id. at p. 984, 68 Cal.Rptr.2d 553.) "The interest in restoring balance to our justice system is also significant. Proposition 213 makes it more difficult for citizens to ignore the Financial Responsibility Law, where the motorists are required to obtain insurance if they wish to drive. Once in effect, law abiding citizens are not forced to pay for the injuiries of those who choose to disobey the law." (Ibid.)
The provisions of Civil Code section 3333.4 relating to damages arising out of the operation or use of an uninsured vehicle, are clear and unambiguous. Them term "operate" is an ordinary word meaning to cause to function." (Webster's Collegiate Diet. (10th prohibits uninsured motorists and drunk ed.1995) p. 815.) A person operates a motor vehicle when the person causes the motor vehicle to function in the manner for which the automobile is fitted. The term use is also an ordinary word. It means to employ, put into action or service, or utilize. (Id., p. 1301.)
Plaintiff attempts to limit the terms "operation" and "use" to driving. Although driving is included within the concepts of operation and use of a vehicle, operation is a broader concept than driving and does not require that the vehicle be in motion or even have the engine running. (Padilla v. Meese (1986) 184 Cal.App.3d 1022, 1028, fn. 1, 229 Cal.Rptr. 310.) Operation includes stopping, parking on the highway, and other acts fairly regarded as a necessary incident to the driving of the vehicle. (Ibid.) Operation of a motor vehicle includes opening the driver's door of a parked vehicle to exit, accidentally striking a passing bicyclist. (Adler v. Department of Motor Vehicles (1991) 228 Cal. App.3d 252, 258, 279 Cal.Rptr. 28.) Use is an even broader concept than operation. It extends to any activity utilizing the vehicle, (United Services Automobile Assn. v. United States Fire Ins. Co. (1973) 36 Cal.App.3d 765, 768-769, 111 Cal.Rptr. 595; State Farm Fire & Cos. Co. v. Camara (1976) 63 Cal.App.3d 48, 53-54,133 Cal.Rptr. 600.) Putting chains on a stopped vehicle constitutes a use of the vehicle. (Cocking v. State Farm Mut. Automobile Ins. Co. (1970) 6 Cal.App.3d 965, 971, *389 86 Cal.Rptr. 193.) So does parking, leaving the doors open, and failing to set the parking brake. (National American Ins. Co. v. Coburn (1989) 209 Cal.App.3d 914, 920, 257 Cal.Rptr. 591.) Loading and unloading a vehicle are uses of the vehicle. (International Business Machines Corp. v. Truck Ins. Exch. (1970) 2 Cal.3d 1026, 1029, 89 Cal.Rptr. 615, 474 P.2d 431.)
In this case, plaintiff had driven his car, parked, turned off the engine, and opened his car door to exit. Plaintiff was required to enter and exit his car in order to drive it. Plaintiffs act of opening his car door to exit is part of the "operation" of the automobile, because opening the door to get into or out of the car is necessary to the driving of the vehicle. Even were exiting a vehicle not part of the "operation" of the vehicle, opening the door in order to exit is a "use" of the vehicle. An accident which occurs as a result of opening a car door to exit is an accident arising out of the use of the car. We conclude plaintiffs action in opening his car door to exit is part of the "operation" or "use" of his car within the meaning of Civil Code section 3333.4. Because plaintiff was uninsured at the time of the accident, the trial court properly ruled that Civil Code section 3333.4 prevented him from recovering non-economic damages.
Civil Code section 3333.4 is a remedial statute and thus to be construed broadly to effect its purposes. Our construction of the statutory terms "operation" and "use" to include exiting a parked vehicle effectuates the purposes of the initiative. If the collision were determined to be the fault of plaintiff opening his door into traffic, plaintiff would have no insurance available to cover his liability to defendant. There is no question that the collision would have been covered by automobile insurance if plaintiff had obtained such insurance as required by law. The initiative seeks to ameliorate rising automobile insurance premiums by encouraging uninsured motorists to obtain insurance. Limiting plaintiffs damages arising out of a collision for which he could have obtained automobile insurance encourages him to obtain automobile insurance. The initiative also seeks to restore balance to the justice system. Limiting plaintiffs damages in this case to economic losses tends to equalize the litigation benefits for insured plaintiffs suing uninsured defendants and uninsured plaintiffs suing insured defendants.
II.-III.[**]

DISPOSITION
The judgment is reversed. The parties are to bear their own costs on appeal.
ARMSTRONG and GODOY PEREZ, JJ., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II. and III. of the discussion.
[1] Civil Code section 3333.4 appears twice in the Civil Code. The Legislature adopted a first section 3333.4 concerning pipeline corporations and oil spills during its 1995 legislative session. (Quackenbush v. Superior Court (1997) 60 Cal. App.4th 454, 459, fn. 1, 70 Cal.Rptr.2d 271.) The second section 3333.4, concerning the economic losses of uninsured motorists and drunk drivers, is the statute involved in this case.
[2] Plaintiff has provided a partial reporter's transcript. Since the partial transcript includes all testimony relevant to liability, it is a sufficient record for purposes of appellate review in this case. We have taken judicial notice of the trial exhibits in this case.
[3] Civil Code section 3333.4 provides in full as follows: "(a) Except as provided in subdivision (c), in any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies: [¶] (1) The injured person was at the time of the accident operating the vehicle in violation of Section 23152 or 23153 of the Vehicle Code, and was convicted of that offense [driving under the influence]. [¶] (2) The injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state. [¶] (3) The injured person was the operator of a vehicle involved in the accident and the operator can not establish his or her financial responsibility as required by the financial responsibility laws of this state. [¶] (b) Except as provided in subdivision (c), an insurer shall not be liable, directly or indirectly, under a policy of liability or uninsured motorist insurance to indemnify for non-economic losses of a person injured as described in subdivision (a). [¶] (c) In the event a person described in paragraph (2) of subdivision (a) was injured by a motorist who at the time of the accident was operating his or her vehicle in violation of Section 23152 or 23153 of the Vehicle Code, and was convicted of that offense, the injured person shall not be barred from recovering non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages."
[4] Civil Code section 3333.3 provides as follows: "In any action for damages based on negligence, a person may not recover any damages if the plaintiff's injuries were in any way proximately caused by the plaintiff's commission of any felony, or immediate flight therefrom, and the plaintiff has been duly convicted of that felony."
[**] See footnote *, ante.