Filed 9/23/16  In re A.K. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re A.K., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.B., ET AL.,<br><br>Defendants and Appellants. | A147327, A147568<br><br>(Alameda County Super. Ct. No. OJ14022979) |

R.B. (father) and E.K. (mother) appeal from an order terminating their parental rights pursuant to Welfare and Institutions Code section 366.26 with respect to minor A.K.[1]  Father and mother contend that respondent Alameda County Social Services Agency (Agency) failed to provide proper notice to several tribes under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.).  We will conditionally reverse the order and remand for additional notice under the ICWA and further proceedings consistent with this opinion.

---

[1]     Except where otherwise indicated, all statutory references are to the Welfare and Institutions Code.

1

## I. FACTS AND PROCEDURAL HISTORY

On May 28, 2014, the Agency filed a dependency petition regarding A.K., then 13 months old, under subdivisions (b), (g), and (j) of section 300. The petition alleged that mother and father were unable to provide for A.K.'s care due to their mental illness, asserting that mother had undiagnosed mental health issues that had limited her care for A.K.'s siblings, father had post traumatic stress syndrome, mother was arrested for domestic violence, and mother and father had been involved in ongoing domestic violence in A.K.'s presence. The petition further alleged that mother had previously abused or neglected A.K.'s siblings, noting she had failed to reunify with two of his siblings and had been charged with felony endangerment of one of them. The Agency's detention report admonished that mother and father had an "extremely volatile relationship" and advised that A.K. is mother's seventh child, she does not have custody of any of her children, and she was on formal probation for felony willful cruelty to a child at the time.

The juvenile court found that father was the presumed father of A.K. and detained the minor.

### A. Initial ICWA Notices

On some basis not discussed by the parties, the Agency determined that A.K. may be eligible for membership in the Blackfeet, Sioux, or Potawatomi tribes. The Agency notified mother and father, the Bureau of Indian Affairs (BIA), the Citizen Potawatomi Nation, and the Oglala Sioux Tribe of the detention hearing by sending a Notice of Child Custody Proceeding For Indian Child (form ICWA-030) to the BIA and to the tribes' purported ICWA representatives or coordinator on May 29, 2014.

Also on May 29, 2014, father filed a Parental Notification of Indian Status (form ICWA-020), indicating that he might have Indian ancestry with the Blackfeet tribe. On that same date, mother filed an ICWA-020 indicating she had no Indian ancestry. Ostensibly due to father's ICWA-020, the Agency sent notice of the jurisdiction and disposition hearing using a ICWA-030 form addressed to the BIA and the Blackfeet ICWA coordinator on June 14, 2014.

2

The Citizen Potawatomi Nation signed the return receipt for the ICWA notice and, by letter dated June 11, 2014, requested full names and dates of birth to determine whether A.K. might be eligible for membership (although this information seems to have been provided in the notice already).  The Blackfeet tribe signed the return receipts and, by letters of June 6, 2014, and June 25, 2014, notified the Agency that it did not have records indicating Native American ancestry of A.K., father, or mother.  The Oglala Sioux Tribe and the BIA also signed return receipts in June 2014.

B.  Jurisdictional Proceedings

The Agency's jurisdiction report of June 12, 2014, advised that A.K. was in a foster home.  The Agency recommended that the allegations of the dependency petition be sustained and that both parents complete a psychological evaluation.  The Agency also noted that the ICWA might apply based on father's assertion of Blackfeet ancestry.

The Agency's addendum report of July 16, 2014, again noted mother's and father's volatility, including incidents in which father screamed in the court hallway on a prior hearing date, father threatened the foster parent, and mother yelled at the child welfare worker to the point the worker requested a sheriff escort.

After a contested jurisdictional hearing on July 16, 2014, the court found the allegations of the petition true.

C.  Disposition Proceedings

The Agency's disposition report of August 1, 2014, recommended that A.K. be declared a dependent of the court and that mother and father be offered reunification services.  The report noted that mother tried to give A.K. Pepsi in his bottle during a supervised visit, and when the child welfare worker asked her not to, mother became so angry that the worker feared for her safety and summoned deputies.  Mother later left several vulgar and threatening messages for the worker's supervisor.  Mother refused to participate in a psychological evaluation, and father had not participated in one despite a referral.

3

The disposition report further advised that the ICWA did not apply because, although father had reported Blackfeet affiliation, the Blackfeet tribe denied having any record of father's ancestry.

The disposition hearing was held on August 25, 2014. On September 3, 2014, the court adopted the Agency's recommended findings and orders, declared A.K. a dependent, and ordered reunification services.

D. Placement Change

On December 16, 2014, the Agency filed an ex parte application to move A.K. from the foster home to the home of the maternal aunt. At a hearing on January 13, 2015, the court granted the Agency's request despite the parents' objection.

E. Six Month Review

The Agency's six-month status review report reiterated that the ICWA did not apply. In addition, noting the referrals that it had provided to mother and father, the Agency recommended that reunification services be terminated and a section 366.26 hearing be set. The child welfare worker opined that it would be detrimental to return A.K. to mother or father because they were involved in an ongoing domestic violence relationship and had not participated in their case plans. Mother had not participated in a domestic violence program, psychological evaluation, or parenting classes as ordered by the court; she admitted that she had not participated in the case plan and was not going to do so; and although she had visited with A.K., she had not addressed the issues that led to his removal. Father claimed he had previously participated in a psychological evaluation through Veteran's Affairs (VA) and was participating in groups through the VA, but his VA social worker reported that he had not participated in a psychological evaluation and there was no record of his recent attendance in domestic violence groups, parenting classes, or mental health services. In December 2014, father was arrested for domestic battery on mother.

The Agency's addendum report again recommended termination of services and a section 366.26 hearing. Mother had acknowledged a history of domestic violence with father, yet continued to deny she needed services. Father had not regularly visited A.K.

4

At the six-month review hearing on May 20, 2015, the court adopted the Agency's recommended findings and orders, found that the ICWA did not apply, terminated services as to both parents, and set a section 366.26 hearing for September 2015.

F. Section 366.26 Proceedings and Additional ICWA Notices

On August 25, 2015, the Agency filed a 366.26 "WIC Memorandum," in which it identified adoption as the permanent plan proposed for A.K. but requested a continuance of the section 366.26 hearing to complete notice under the ICWA.

The Agency explained that notice had been sent to only one of the 16 Sioux tribes and only one of the seven Potawatomi tribes; furthermore, the information in the notice appeared to be incorrect because it listed father's date of birth as the birthdate of the paternal grandfather. The child welfare worker asked father by phone to clarify his tribal affiliations and supply accurate ancestry information; father indicated he was affiliated with tribes other than the Blackfeet tribe but refused to give any other information, referring the worker to his attorney. The worker then tried to obtain the information by written correspondence with father and his attorney, but to no avail. On July 13, 2015, the child welfare worker sent a new ICWA-030 notice to the BIA, the Department of the Interior, the Blackfeet tribe, and all of the Sioux and Potawatomi tribes by certified mail with return receipt requested. The Agency thereafter received return receipts from all of the tribes, but because it had not received response letters from all the tribes, the Agency requested a continuance until after September 27, 2015 (60 days after the last return receipt was received).

The court continued the section 366.26 hearing to December 2015 and ordered father to file an updated ICWA-020.

On September 9, 2015, father filed a new ICWA-020, asserting that he may be a member of, or eligible to be a member of, not just the Blackfeet tribe (which he had disclosed previously) and the Sioux and Potawatomi tribes (which the Agency had considered), but also the Cherokee, Crow, and Apache tribes. The child welfare worker obtained additional ancestry information from the paternal grandmother and a paternal cousin.

5

On September 15, 2015, the Agency sent a new ICWA-030—including the new ancestry information—to the BIA, the Department of the Interior, and the Blackfeet, Sioux, Potawatomi, Cherokee, Crow, and Apache tribes by certified mail with return receipt requested. The mailing of this notice is at issue in this appeal.

The Agency set forth the details and results of its latest effort to comply with the ICWA in its 366.36 WIC Report filed on December 1, 2015 (366.26 Report). The Agency had received return receipts from all of the tribes. It had also received response letters from 26 of the tribes, all of whom denied any record of father's Indian ancestry. Letter responses had not been received from ten of the tribes. The 366.26 Report specified the date the notice was mailed, the date of each tribe's receipt, whether a response was received from the tribe, and whether the response denied A.K.'s eligibility in the tribe.[2]

The Agency's notice to the tribes, certified mail receipts, return receipts received from the tribes, and *some* of the tribes' response letters referenced in the 366.26 Report were filed with the court on November 19, 2015.

At the section 366.26 hearing on December 16, 2015, the court admitted the Agency's reports and father testified. After the evidence was submitted, the court requested an update regarding the ICWA. The child welfare worker replied that she had received "one more letter stating that [A.K.] is not eligible. I have not received anything from any other tribes stating that [A.K.] is eligible." Father then stated that he had yet more ICWA information: actual "Indian enroll dates" for his tribe, which supposedly had been previously refused by the Agency. The court ordered father to present the information to the Agency by the end of the week and set the matter for December 28, 2015.

---

[2]     The 366.26 Report also stated that the Agency had found A.K. adoptable, it was likely he would be adopted, and A.K.'s maternal aunt was committed to adopting him. The report asserted that neither mother nor father ever progressed to unsupervised visits, and their supervised visits were marred by inappropriate, aggressive, and violent behavior; the parents also repeatedly threatened child welfare workers, supervisors, and service providers.

On December 28, 2015, the child welfare worker informed the court that father failed to provide any additional information, and although she followed up with a paternal cousin who said he would send her information, no information was received. The child welfare worker added that she had not received any additional response from the tribes, and that all the tribes had either advised that A.K. was not eligible for enrollment or had not responded.

On that same date, the juvenile court found that A.K. was not an Indian child and that no further ICWA notice was required. The court further found that the Agency had provided reasonable services and there was clear and convincing evidence A.K. would likely be adopted. The court terminated mother's and father's parental rights.

Mother and father each appealed, and we consolidated the appeals.

## II. DISCUSSION

Mother and father challenge the order terminating their parental rights solely on the ground that the Agency failed to comply with the notice provisions of the ICWA.[3]

As set forth in the Agency's 366.26 Report, notice was provided to all of the tribes, all of the tribes returned receipts indicating that the notices had reached them, none of the tribes claimed A.K. was a member of the tribe (or eligible to become a member), and the tribes who responded stated that A.K. was not, in fact, eligible to become a member. Parents argue, however, that notice was not properly given as to several tribes, because the ICWA-030 was not mailed to an individual designated in the Federal Register as the tribal agent for service of notice, or was sent to an address different from what was listed in the Federal Register.

We begin with a brief review of the ICWA notice requirements. We next consider the notice as to the tribes who did not reply with a letter response. We then address the notice as to the tribes who replied with a letter response, but whose response was not

---

[3]     An order terminating parental rights may be challenged on the ground that notice was inadequate under the ICWA, even if the parents had not previously raised the issue. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 10, 13; *In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1267–1268.)

7

filed with the juvenile court. (Mother and father do not challenge the notice with respect to tribes whose letter responses *were* filed with the juvenile court, acknowledging that any error in notice as to those tribes was harmless.)

A. <u>Law</u>

Where the juvenile court knows or has reason to know that an Indian child is involved, the ICWA requires the Agency to notify the Indian child's tribe of the pending proceedings and its right of intervention. (25 U.S.C. § 1912(a); see Cal. Rules of Court, rule 5.481.) Under California law, the Agency must send notice, return receipt requested, to "all tribes of which a child may be a member or eligible for membership." (§ 224.2, subd. (a)(3).) If the identity or location of the tribe cannot be determined, the same procedure should be used with respect to notice to the BIA. (*In re Marinna J.* (2001) 90 Cal.App.4th 731, 739–740 fn. 4 (*Marinna J.*).)

Notice to the tribe must be sent to the tribal chairperson, unless the tribe has designated another agent for service. (§ 224.2, subd. (a)(2).) The designated tribal agents for service of ICWA notice are published in the federal register. (See *In re J.T.* (2007) 154 Cal.App.4th 986, 994 (*J.T.*); *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1201; 25 C.F.R. § 23.12 (2007).) At the time the ICWA notice in this case was sent in 2015, the designated tribal agents were identified at 79 Fed.Reg. 72009 et seq.

As this court has explained, "[t]he purpose of the requirement that notice be sent to the designated persons is to ensure that notice is received by someone trained and authorized to make the necessary ICWA determinations, including whether the minors are members or eligible for membership and whether the tribe will elect to participate in the proceedings." (*J.T., supra*, 154 Cal.App.4th at p. 994.)

The Agency must file with the juvenile court the ICWA notice, return receipts, and any response received from the BIA and the tribes relevant to the child's Indian status. (§ 224.2, subd. (c); see Cal. Rules of Court, rule 5.482(a)(1); *Marinna J., supra*, 90 Cal.App.4th at pp. 739–740, fn. 4.) No foster care placement or termination of parental rights proceeding shall be held until at least 10 days after receipt of notice by the

parent or Indian custodian and the tribe or BIA. (25 U.S.C. § 1912(a); § 224.2, subd. (d); Cal. Rules of Court, rule 5.482(a)(1); *In re Desiree F.* (2000) 83 Cal.App.4th 460, 465.)

We review the court's finding that proper ICWA notice was given for substantial evidence. (*J.T., supra,* 154 Cal.App.4th at p. 991; *In re N.M.* (2008) 161 Cal.App.4th 253, 268 (*N.M.*).)

B.  Notices to Tribes for Which No Letter Response Was Received

Mother and father contend the notices sent to the following tribes did not comply with the ICWA; these tribes returned receipts indicating that the notices had indeed reached them, but they did not send a substantive response indicating whether or not A.K. had Indian ancestry in the tribe.

1.  Jicarilla Apache Nation

According to the Federal Register, the designated agent and address for the Jicarilla Apache Nation was "Olivia Nelson-Lucero, Acting Program Manager, Jicarilla Behavioral Health, P.O. Box 546, Dulce, NM 87528." (79 Fed. Reg. 72027.)

According to the certified mailing receipt, the Agency sent the notice to the designated address, but directed it to "Director, Mental Health/Social Services" rather than to "Olivia Nelson-Lucero, Acting Program Manager, Jicarilla Behavioral Health."[4]

The Agency acknowledges the inaccuracy with respect to the addressee but urges that the error was harmless because notice was sent to the "substantially correct recipient." We disagree. The record discloses no basis for concluding that a notice sent to the Director of Mental Health/Social Services, rather than the Acting Program Manager of Jicarella Behavioral Health, would ensure that "notice is received by someone trained and authorized to make the necessary ICWA determinations, including whether the minors are members or eligible for membership and whether the tribe will elect to participate in the proceedings." (*J.T., supra*, 154 Cal.App.4th at p. 994.) Furthermore, although a return receipt was received from the tribe, the receipt merely

---

[4]     The ICWA-030 itself, which includes a proof of mailing, identifies the addressee as "Monica L. Carrasco, Director."

9

indicates that the notice was delivered to *someone* at the tribe, not the tribal chairperson or designated agent. The Agency fails to establish that the error was harmless. (*Ibid.*)

### 2. Tonto Apache Tribe

The designated agent and address for the Tonto Apache Tribe was "Brian Echols, Social Services Director, T.A.R. #30, Payson, AZ 85541." (79 Fed. Reg. 72029.) The Agency sent the notice to the designated address, but directed it to "Lyndsie Butler, Social Services Director" rather than to "Brian Echols, Social Services Director."

Substantial evidence supported the conclusion that notice was adequately given to the tribe, or any error in this regard was harmless. Although the mailing address identified a different individual, the fact that it specified the "Social Services Director" in accord with the Federal Register, at the address specified by the Federal Register, demonstrates substantial compliance with the notice requirement and gives rise to an inference that the notice would be received by someone trained and authorized to make the necessary ICWA determinations. (See *N.M., supra*, 161 Cal.App.4th at p. 268 ["[r]equiring literal compliance solely by reference to the names and addresses listed in the last published Federal Register would exalt form over substance;" the juvenile court must determine "as a matter of fact from all the circumstances whether appropriate notice has been given"].)

### 3. White Mountain Apache Tribe

The designated agent and address for the White Mountain Apache Tribe was "Cora Hinton, ICWA Representative/CPS Supervisor, P.O. Box 1870, Whiteriver, AZ 85941." (79 Fed. Reg. 72029.) The Agency sent notice to the designated address, but to "Mariella Dosela, ICWA Representative" rather than to "Cora Hinton, ICWA Representative/CPS Supervisor." Since the notice was directed to the ICWA Representative at the correct address, substantial evidence supported the conclusion that notice to this tribe was adequate or that any notice error was harmless.

### 4. Yavapai Apache Nation

The designated agent and address for the Yavapai Apache Nation was "Linda Fry, Director, Department of Social Services, 2400 West Datsi Street, Camp Verde, AZ

86322." (79 Fed. Reg. 72029.) The Agency sent notice to the designated address, but omitted Linda Fry's name and title. In other words, it simply sent the notice to the *tribe*, rather to any particular person at the tribe. This is the very error that compelled a reversal in *J.T., supra*, 154 Cal.App.4th at p. 994. The Agency provides no basis for concluding that notice to this tribe was sufficient or that the error was harmless. New and proper notice must be provided to the tribe.

### 5. Crow Tribe of the Crow Reservation of Montana

The designated agent and address for the Crow Tribe of the Crow Reservation of Montana was "Melveen Paula Fisher, ICWA Coordinator, P.O. Box 340, Crow Agency, MT 59022." (79 Fed. Reg. 72026.) The Agency sent notice to the "ICWA Representative" rather than to Fisher as "ICWA Coordinator." Moreover, the notice was *not* sent to the address designated in the Federal Register; it was sent to P.O. Box 159 rather than to P.O. Box 340.

The Agency argues that this was good enough, because the BIA Tribal Leader's Directory provides an address for the tribe that includes "P.O. Box 159." The Agency refers us to *N.M.*, in which the court concluded that the ICWA does not require notice mailed to the names and addresses in the Federal Register "if a more current or accurate listing is available and is reasonably calculated to provide prompt and actual notice to the tribes." (*N.M., supra*, 161 Cal.App.4th at p. 268; see also § 224.3, subd. (c) [requiring social worker to make further inquiry by, among other things, contacting BIA and the State Department of Social Services "for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership"].) In *N.M.*, the social services agency had obtained the names and addresses for the notice from those listed on the State Department of Social Services website. (*N.M., supra,* 161 Cal.App.4th at p. 268.)

The Agency's notice in this case, however, is problematic for two reasons. First, the Agency does not show that the BIA Tribal Leader's Directory offered "a more current or accurate listing" than the Federal Register at the time of the notice. (*N.M., supra*, 161

Cal.App.4th at p. 268.) Second, the Agency did not actually use the full address set forth in the BIA Tribal Leader's Directory.

The BIA Tribal Leader's Directory provides, for the Crow Tribe of Montana, an address of "*Darrin Old Coyote, Chairman*, Crow Tribe of Montana, P.O. Box 159, Crow Agency, MT 59022." (http://indianaffairs.gov/cs/groups/xois/documents/document/idc1-028053.pdf, page 75 of 93; italics added.)[5] But the Agency provided notice to "Crow Tribe of Montana, *ICWA Representative,* P.O. Box 159, Crow Agency, Montana 59022." (Italics added.) The BIA Tribal Leader's Directory identifies the tribal chairperson, not an ICWA representative or other designated agent. (See § 224.2, subd. (a)(2) [requiring notice to tribal chairperson unless an agent is designated].) Moreover, rather than sending notice to the ICWA Coordinator at P.O. Box 340 (pursuant to the Federal Register) or to Darrin Old Coyote, Chairman, at P.O. Box 159 (pursuant to the BIA Tribal Leaders Directory), the Agency merged information from these two sources and sent the notice to "ICWA Representative" at P.O. Box 159.

We question whether notice to this tribe was sufficient and whether such an error could be deemed harmless based on the Agency's arguments. Since we are remanding this matter anyway for notice to other tribes, the discrepancies existing between the address used by the Agency and the address in approved sources lead us to require new and proper notice to this tribe on remand as well.

### 6. Lower Sioux

The designated agent and address for the Lower Sioux was "Reanna Jacobs, ICWA Advocate, Darin Prescott, Director, 39568 Reservation Highway 1, Morton, MN 56270." (79 Fed. Reg. 72021.) The Agency sent notice to "ICWA Representative" rather than to "Reanna Jacobs, ICWA Advocate, Darin Prescott, Director." Moreover, the notice was not sent to the address designated in the Federal Register. The Agency claims it was sent instead to an address listed in the BIA's Tribal Leaders Directory, the

---

[5] The Agency asks us to take judicial notice of the BIA's Tribal Leaders Directory, available at http://www.indianaffairs.gov/ cs/groups/xois/documents/ document/idc1-028053.pdf. Mother and father do not object, and we grant the request.

12

Lower Sioux's website and directory, and the State Department of Social Services on the California government website.[6]

The parties debate the propriety of this notice in their briefs. It raises enough questions that we will require new and proper notice to this tribe upon remand.

### 7. Oglala Sioux Tribe

The designated agent and address for the Oglala Sioux Tribe was "Juanita Sherick, Director ONTRAC, P.O. Box 2080, Pine Ridge, SD 57752." (79 Fed. Reg. 72020.) Although the Agency sent notice to the designated address, it directed it to the "ICWA Administrator" rather than to "Juanita Sherick, Director ONTRAC." While sending notice to an ICWA Administrator may well be sufficient in some instances, the record in *this* case does not explain why it would be sufficient when the designated agent is someone who is instead the Director of "ONTRAC." We will therefore require new and proper notice to this tribe on remand.

### 8. Santee Sioux Nation

The designated agent and address for the Santee Sioux Nation was "Clarissa LaPlante, ICWA Specialist, Dakota Tiwahe Service Unit, Route 2, Box 5191, Niobrara, NE 68760." (79 Fed. Reg. 72020.) The Agency sent notice to the designated address, but directed it to the "ICWA Specialist" rather than to "Clarissa LaPlante, ICWA Specialist."

Substantial evidence supports the conclusion that notice was sufficient, or that a notice error was harmless. It is reasonable to conclude that notice addressed to the "ICWA Specialist" at the correct address was delivered to the tribe's ICWA Specialist— the authorized person for membership eligibility purposes or one who would ensure its delivery to that person—whether or not the ICWA Specialist was identified by name.

---

[6]     The Agency requested in its respondent's brief that we take judicial notice of the Lower Sioux online tribal directory and a list provided by the State Department of Social Services. We grant the unopposed request.

9. Standing Rock Sioux Tribe

The designated agent and address for the Standing Rock Sioux Tribe was "Terrance Yellow Fat, Director, Indian Child Welfare Program, P.O. Box 770, Fort Yates, ND 58538." (79 Fed. Reg. 72020.) According to the certified mail receipt and return receipt, the Agency sent notice to the designated address, but directed it to "Raquel Franklin" rather than to "Terrance Yellow Fat, Director."

The Agency does not tell us who Raquel Franklin is. The ICWA-030 notice indicated it was being sent to the tribe's "ICWA Representative," but there is no indication that Franklin was in fact the ICWA Representative at the time. (We do note that Franklin is listed as the ICWA Director in the *current* list of designated agents, set forth at 81 Fed. Reg. 10900.) Moreover, while the notice says it was being sent to the ICWA Representative, the words "ICWA Representative" do not appear on the certificate of mailing. We will require new and proper notice to this tribe on remand.

10. Hannahville Indian Community of Michigan[7]

The designated agent and address for the Hannahville Indian Community of Michigan was "Jessica Brock, ICWA Worker, N15019 Hannahville B1 Road, Wilson, MI 49896." (79 Fed. Reg. 72021.) The Agency sent notice to the designated address, but directed it to "ICWA Worker" rather than to "Jessica Brock, ICWA Worker." Substantial evidence supported the conclusion that notice was sufficient or that any error was harmless.

11. Fort Sill Apache Tribe of Oklahoma

The designated agent and address for the Fort Sill Apache Tribe of Oklahoma was "Ramona Austin, ICWA Director, 43187 US Highway 281, Apache, OK 73006." (79 Fed. Reg. 72027.) The Agency sent the notice to the designated address, but directed it to "ICWA Director" rather than to "Ramona Austin, ICWA Director." The ICWA-030

---

[7]     The Hannahville Indian Community is affiliated with the Potawatomi. (77 Fed. Reg. 45849, 45850 (8/2/2012).)

14

form indicated that the notice was being sent to Ramona Austin. Substantial evidence supports the conclusion that the notice was sufficient, or any error was harmless.

C. Notice to Tribes for Which a Letter Response was Received but Not Filed

Mother and father next argue that the notice sent to the following tribes also did not comply with the ICWA; according to the Agency, these tribes *did* send a response indicating that A.K. was not eligible for membership in the tribe, but the responses were not filed with the court. We address the notice to these tribes separately in light of the parties' arguments concerning harmless error.

1. Prairie Island Indian Community[8]

The designated agent and address of the Prairie Island Indian Community was "Nancy Anderson, Family Service Manager, 5636 Sturgeon Lake Road, Welch, MN 55089." (79 Fed. Reg. 72021.) The Agency sent notice to the designated address, but directed it to "ICWA Representative" rather than to "Nancy Anderson, Family Service Manager." The record does not disclose why the notice would ensure that it would be delivered to the appropriate person.

However, according to the Agency's 366.26 Report, the tribe sent a response to the Agency indicating that A.K. is not eligible for membership. A response from the tribe that the child is not eligible for tribal membership generally renders harmless an error in the notice, since it indicates that the appropriate person received and acted upon it. (*J.T.*, *supra*, 154 Cal.App.4th at p. 994.)

Parents nonetheless complain that a copy of the purported response from this tribe was not included in the responses filed with the juvenile court, as required by section 224.2. (§ 224.2, subd. (c) ["Proof of the notice, including copies of notices sent and all return receipts and responses received, shall be filed with the court in advance of the hearing except as permitted under subdivision (d)," inapplicable here]; see *Marinna J.*, *supra*, 90 Cal.App.4th at pp. 739–740 fn. 4.) Thus, they urge, the child welfare worker's

---

[8] The Prairie Island Indian Community is affiliated with the Sioux. (77 Fed. Reg. 45852; 79 Fed.Reg. 72021 12/4/2012.)

15

*representation* in the 366.26 Report and to the court that a response was received, and that the response said A.K. was ineligible for membership, is insufficient to render the notice error harmless.

The Agency counters that an official is presumed to have complied with statutory and regulatory standards under Evidence Code section 664. We do not see how a presumption that an official has performed his or her duty could apply to the question of whether a notice error is harmless where a response letter has not been filed with the court. The presumption is inapplicable if the standards set forth in the relevant statute or regulation were not observed in some respect. (*Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 144.) Here, by not filing all the responses received, the child welfare worker failed to comply with the standard set forth in section 224.2, subdivision (c). Furthermore, the child welfare worker made (or adopted) mistakes in the very report that represented the Prairie Island Indian Community had sent a response: the 366.26 Report sets forth the names and addresses to which notice was purportedly sent to the tribes, but this information is different than what actually appears on the certified mail receipts for the Jicarilla Apache Nation, the Standing Rock Sioux Tribe, and the Hannahville Indian Community of Michigan.

While we do not hold that a notice error can never be harmless unless the tribe's response has been filed with the court, we conclude that the Agency has not demonstrated in *this* case that the notice error was harmless. We will therefore require that new and proper notice be given to the tribe on remand.

### 2. Sisseton-Wahpeton Oyate[9]

The designated agent and address for the Sisseton-Wahpeton Oyate tribe was "Evelyn Pilcher, ICWA Specialist, P.O. Box 509 Agency Village, SD 57262." (79 Fed. Reg. 72020.) The Agency sent notice to the designated address, but directed it to "ICWA Director" rather than Pilcher as "ICWA Specialist," and added "Lake/Traver" to the

---

[9]     The Sisseton-Wahpeton Oyate tribe is affiliated with the Sioux. (77 Fed. Reg. 45852, 45853 (8/2/2012).)

name of the tribe.  Substantial evidence supports the conclusion that the notice was sufficient or the error was harmless.

### 3. United Keetoowah Bank of Cherokee Indians in Oklahoma

The designated agent and address for the United Keetoowah Band of Cherokee Indians in Oklahoma was "Joyce Hawk, Tribal Secretary, P.O. Box 746, Tahlequah, OK 74464." (79 Fed. Reg. 72020.)  The Agency sent notice to the designated address, but directed it to "ICWA Representative" rather than to "Joyce Hawk, Tribal Secretary." Substantial evidence supports the conclusion that the notice was sufficient or the error was harmless.

### 4. Shakopee Mdewakanton Sioux Community

The designated agent and address for the Shakopee Mdewakanton Sioux Community was "Karen Ross -- ICWA Representative, 2330 Sioux Trail NW, Prior Lake, MN 55372." (79 Fed. Reg. 72021.)  The Agency sent notice to the designated address, but directed it to "ICWA Representative" rather than to "Karen Ross -- ICWA Representative."  Substantial evidence supports the conclusion that the notice was sufficient or the error was harmless.

### 5. Upper Sioux Community of Minnesota

The designated agent and address for the Upper Sioux Community of Minnesota was "Linette Tellinghuisen, ICWA Manager, P.O. Box 147, 5744 Hwy. 57, Granite Falls, MN 56241." (79 Fed. Reg. 72021.)  The Agency sent notice to the designated address, but directed it to "ICWA Representative" rather to than "Linette Tellinghuisen, ICWA Manager."  Substantial evidence supports the conclusion that the notice was sufficient or the error was harmless.

### 6. Yankton Sioux Tribe

The designated agent and address for the Yankton Sioux Tribe was "Raymond Cournoyer, ICWA Director, P.O. Box 1153, 108 East Avenue South East, Wagner, SD 57380." (79 Fed. Reg. 72020.)  The Agency sent notice to designated address, but directed it to the "ICWA Director" rather than to "Raymond Cournoyer, ICWA

Director." Substantial evidence supports the conclusion that the notice was sufficient or the error was harmless.

D. Conclusion

We will conditionally reverse the order terminating parental rights and remand the matter to the juvenile court on a limited basis. The juvenile court shall order the Agency to send proper ICWA notice to the following tribes: Jicarilla Apache Nation, Yavapai Apache Nation, Crow Tribe of the Crow Reservation of Montana, Lower Sioux, Oglala Sioux Tribe, Standing Rock Sioux Tribe, and Prairie Island Indian Community.

If the tribes receive proper notice and a tribe or tribes conclude that A.K. is eligible for membership in the tribe, the juvenile court must further comply with the ICWA. (*Tina L. v. Superior Court* (2008) 163 Cal.App.4th 262, 267–269 (*Tina L.*); *J.T., supra*, 154 Cal.App.4th at p. 995.) If it is determined that A.K. is an Indian child, the orders terminating parental rights shall be vacated and the juvenile court shall hold a new section 366.26 hearing in compliance with the ICWA procedural and evidentiary requirements. If, on the other hand, no tribe responds with a statement that A.K. is a member or eligible for membership in its tribe and the juvenile court finds that A.K. is not an Indian child, the order terminating parental rights shall be reinstated. (*Tina L., supra*, at pp. 267–269; *In re J.T., supra*, at p. 995.)

III. DISPOSITION

The order terminating parental rights is conditionally reversed. The matter is remanded to the juvenile court, and the juvenile court is directed to order the Agency to send proper ICWA notice to the following tribes: Jicarilla Apache Nation, Yavapai Apache Nation, Crow Tribe of the Crow Reservation of Montana, Lower Sioux, Oglala Sioux Tribe, Standing Rock Sioux Tribe, and Prairie Island Indian Community. If the tribes receive proper notice and a tribe or tribes conclude that A.K. is eligible for membership in the tribe, the juvenile court must further comply with the ICWA. If it is determined that A.K. is an Indian child, the orders terminating parental rights shall be vacated and the juvenile court shall hold a new section 366.26 hearing in compliance with the ICWA procedural and evidentiary requirements. If, on the other hand, no tribe

18

responds with a statement that A.K. is a member or eligible for membership in its tribe and the juvenile court finds that A.K. is not an Indian child, the order terminating parental rights shall be reinstated.

_____
NEEDHAM, J.

We concur.

_____
JONES, P.J.

_____
BRUINIERS, J.