Filed 10/21/19; Certified for Partial Pub. 11/12/19 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KENNITH HAROLD EVANS, | D073969 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2017-00032144-CU-WM-CTL) |
| JEAN SHIOMOTO, as Director, etc., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Affirmed.

Childers and Associates, Ryan D. Childers, Philip J. Krum and Jacqueline A. Mandel for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Chris A. Knudsen, Assistant Attorney General, Celine M. Cooper and Alice Q. Robertson, Deputy Attorneys General, for Defendant and Respondent.

Kennith Harold Evans was pulled over for driving with his off-road-only lights illuminated while on a "highway," in violation of Vehicle Code[1] section 24411. After exhibiting signs of intoxication, Evans consented to a chemical breath test that registered a blood alcohol level above 0.08 percent. Evans was arrested and served with a notice that his license was being suspended for driving a motor vehicle with a blood alcohol level of 0.08 percent or more. (See §§ 13353.2, 13353.3, 13382.) The Department of Motor Vehicles (DMV) upheld the suspension after conducting an administrative hearing. Evans thereafter filed a petition for a writ of administrative mandate challenging the DMV's decision.

Evans now appeals from the superior court's denial of his writ petition. He asserts substantial evidence does not support the finding he was lawfully detained because he was allowed to use off-road lights inasmuch as the road he was on was not a "highway" as defined by section 24411. In addition, he asserts substantial evidence does not support the finding he was driving with a blood alcohol level of 0.08 percent or more. He contends the time entries on the notice indicate the arresting officer administered two chemical breath tests before he had had the opportunity to observe Evans for 15 minutes, as required by Title 17 of the California Code of Regulations (Cal. Code Regs., tit. 17, § 1221.1 [formerly § 1219.3]) (Title 17). He maintains this rendered the test results inadmissible. Evans further contends the DMV hearing officer and the superior court

---

[1]    All further statutory references are to the Vehicle Code unless otherwise indicated.

2

improperly relied upon a dispatch log, which showed that the arresting officer complied with the 15-minute observation requirement.

We conclude the initial stop was lawful, the DMV and superior court properly considered the dispatch log and breath test results, and substantial evidence supports the superior court's findings. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

United States Forest Service Officer Ethan White was on patrol in the Imperial County Sand Dunes Recreational Area near Glamis, California on the evening of December 30, 2016, when he noticed a pickup truck with its off-road-only lights illuminated while driving on a hard-packed graded dirt road known as Wash Road. The truck was driving on a one-way portion of the road but was approaching a point where the road merged into two-way traffic, and Officer White was concerned the bright lights could interfere with oncoming traffic. Another officer, Ken Marcus, also observed the truck and initiated a traffic stop using his patrol vehicle lights. The truck stopped in the middle of the road, impeding traffic. Officer Marcus used his vehicle air horn several times to get the truck to move but was not successful. He therefore exited his vehicle and directed the truck to the side of the road.

Both officers approached, and Officer Marcus asked the driver, Evans, to exit the vehicle. When the officers informed Evans they had stopped him because of the lights, he stated he did not realize they were on. Officer White noticed Evans smelled of alcohol and had slurred speech and red, bloodshot, watery eyes. When Officer White asked Evans if he had been drinking, Evans stated he had consumed four pale ale beers. Officer

3

White conducted several field sobriety tests, a preliminary alcohol screening (PAS),[2] and two chemical breath tests. Evans registered a 0.16 percent blood alcohol level on the first test, conducted at 10:41 p.m., and a 0.15 percent blood alcohol level on the second, conducted at 10:44 p.m.

Officer White arrested Evans, transported him to the local ranger station, and issued him a form DS-367 Administrative Per Se Suspension/Revocation Order advising him that, based on the chemical breath test results, his license would be suspended, effective 30 days from the date of the order. Officer White reported on the form that, on December 30, 2016, at 10:30 p.m., he observed Evans driving and Evans admitted to driving. He recorded the time and results of the two chemical breath tests and signed the form below the results, certifying under penalty of perjury that the breath test results were obtained in the regular course of his duties, that he was qualified to operate the equipment used, and that the tests were administered in accordance with the requirements of Title 17. He also attached a printout from the test device. The form included a section to record PAS test results, but Officer White left it blank.

Officer White filled out his police report on January 3, 2017, about three days after the incident. In the report, he discussed the reason for the initial stop, described the field sobriety tests, and listed the results of the PAS and the two chemical breath tests.

---

[2] A PAS is an investigative tool used to determine whether there is reasonable cause to believe a person was driving while under the influence and is distinguishable from the "evidentiary" chemical breath tests administered after establishing cause for an arrest. (§ 23612, subd. (h); *People v. Vangelder* (2013) 58 Cal.4th 1, 5, fn. 1.)

However, he incorrectly stated the truck Evans was driving had California plates when it actually had Arizona plates, listed conflicting dates for the stop, and at one point referred to Evans by a different name.

*Administrative Hearing*

Evans requested an administrative hearing pursuant to section 13353.2 to dispute the suspension of his license, and the suspension was stayed pending the outcome.

The hearing was held over two days, May 1 and July 26, 2017, and was limited to the following issues: 1) whether Evans was lawfully detained and arrested; 2) whether there was reasonable cause to believe Evans was driving while under the influence in violation of sections 23152 and 23153; and 3) whether Evans was in fact driving with a blood alcohol level of 0.08 percent or more.

In his testimony, Officer White acknowledged that Wash Road is in an off-highway vehicle recreation area, but stated it is a publicly maintained road with posted traffic signs open only to highway-legal vehicles. He also testified regarding his training concerning Title 17 and the administration of chemical breath tests and stated he was aware Title 17 required him to observe the driver for 15 minutes before conducting a chemical breath test. Because the test strip generated by the testing device includes a time stamp, he was certain of the time at which he conducted the two breath tests. However, he was not certain of the precise time he contacted Evans and thus estimated that time in the DS-367 form and his report. Officer White noted he could confirm the exact time by referencing the agency dispatch records.

5

Following Officer White's testimony on direct, the DMV hearing officer introduced the DS-367 packet (Exhibit 1), Officer White's police report (Exhibit 2), and a driving record printout for Evans (Exhibit 3) into evidence. Evans objected to the DS-367 packet and argued the official duty presumption (Evid. Code, § 664) did not apply to the document because it contained a number of omissions and indicated on its face that the chemical breath tests were taken less than 15 minutes after the stop in violation of Title 17. Evans also objected to Officer White's police report, arguing it was not trustworthy because it was not completed in a timely enough manner and contained multiple levels of hearsay. The hearing officer overruled the objections and admitted the exhibits.

Because defense counsel did not have sufficient time to finish his cross-examination on May 1, the hearing was continued to July 26, 2017. At the outset of the continued hearing, the hearing officer identified a report from the Federal Interagency Communication Center related to the traffic stop at issue titled "WildCAD Incident Card" and marked it as Exhibit 4. Officer White testified Exhibit 4 was a record of the radio traffic between himself and the dispatch center, entered into the CAD system by the dispatcher during the stop on December 30. He did not know the exact manner in which the dispatcher recorded information or generated reports.

The WildCAD dispatch log indicated Officer White had called into dispatch to run Evans's name and license number at 10:24 p.m., and Officer White explained that would have been after he initially contacted Evans. He further explained that the 10:24 p.m. time from the WildCAD dispatch report was more accurate than the 10:30 p.m. estimate

6

he entered on the DS-367 form after transporting Evans to headquarters. Evans objected to the WildCAD dispatch log on foundational grounds and argued Officer White could not state with certainty that the times listed therein were accurate. The hearing officer overruled the objections.

Joseph Pate, an acquaintance driving in another vehicle next to Evans at the time of the stop, testified on Evans's behalf. He stated he was not aware the road they were driving on had a name, and he had never seen any traffic signs on the road or any government vehicles working on or making repairs to it. However, he conceded vehicles that were not off-road vehicles could drive on the road because it was hard-packed.

The DMV hearing officer issued a written decision at the conclusion of the hearing upholding the suspension. Based on credible testimony from Officer White indicating Wash Road was a publicly maintained road and Evans was driving on it with off-road lights on, she found there was reasonable cause to stop Evans. She also concluded Evans demonstrated objective signs and symptoms of being under the influence and it was more likely than not that Officer White complied with the 15-minute observation period required by Title 17. She further determined that even if he did not wait 15 minutes, noncompliance would not exclude the breath test evidence but would instead go to the weight of that evidence. The hearing officer was satisfied the evidence established Evans drove with a blood alcohol level of 0.08 percent or more and re-imposed the suspension of Evans's driver's license.

7

*Petition for Writ of Mandate*

Evans filed a petition for writ of mandate and a request to stay the suspension pending the outcome of the petition. In the petition, Evans asserted the initial stop was improper, the arresting officer did not comply with Title 17, the WildCAD dispatch log and breath test results were inadmissible, and, excluding those exhibits, there was insufficient evidence to support the DMV's findings.

The superior court initially stayed the suspension of Evans's license pending the outcome of his petition for writ of mandate, but ultimately denied the writ petition and reinstated the suspension. In a written decision, the court found Officer White's testimony regarding Wash Road was credible and sufficient to establish reasonable cause for the stop. In addition, the court found that although the DS-367 form was internally inconsistent with respect to the time of the stop and compliance with Title 17, the WildCAD dispatch log could be considered to explain the discrepancy. Using the log's 10:24 p.m. entry as the first observation time, the court concluded Officer White complied with Title 17 and, considering the results of the chemical breath test, further concluded the weight of the evidence supported the DMV's determination Evans drove with a blood alcohol level of 0.08 percent or more.

Evans appeals.

DISCUSSION

I. *Relevant Legal Principles Regarding Administrative Per Se Suspensions*

California's "administrative per se law" requires the DMV to immediately suspend the license of any individual arrested for driving under the influence and determined to

8

have driven with a prohibited amount of alcohol in his or her blood. (See *Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1207 (*Coffey*) [discussing the administrative per se law]; § 13353.2, subd. (a).) The purpose of the statute is to promote highway safety by quickly suspending the license of persons driving under the influence, while also providing prompt administrative review to anyone whose license is suspended. (*Coffey*, at p. 1207; *Lake v. Reed* (1997) 16 Cal.4th 448, 454 (*Lake*).)

Of particular relevance here, section 13382 specifies that if an individual is arrested for driving under the influence of alcohol in violation of sections 23152 or 23153 and the chemical test results show a blood alcohol level of 0.08 percent or more, "the peace officer, acting on behalf of the department, shall serve a notice of order of suspension or revocation of the person's privilege to operate a motor vehicle personally on the arrested person." The notice "shall specify clearly the reason and statutory grounds for the suspension, the effective date of the suspension, the right of the person to request an administrative hearing, the procedure for requesting an administrative hearing, and the date by which a request for an administrative hearing shall be made in order to receive a determination prior to the effective date of the suspension." (§ 13353.2, subds. (b), (c).)

When an officer serves a notice of suspension under the administrative per se law, the officer must also forward a copy of the notice to the DMV, which will automatically review the merits of the suspension. (§ 13382, subd. (c); *Coffey*, *supra*, 60 Cal.4th at pp. 1207-1208.) In addition, the DMV will hold an administrative hearing at the driver's request. (*Coffey*, at p. 1207.) The review is limited, however, to the following issues:

9

whether the arresting officer had reasonable cause to believe the individual was driving under the influence, whether the individual was lawfully arrested or detained, and whether the individual was driving with a blood alcohol level of 0.08 percent or more. (*Id.* at pp. 1207-1208; § 13557, subd. (b)(3)(A), (B), & (C)(i).) If the DMV hearing officer finds each of the issues proven by a preponderance of the evidence, the driver's license will be suspended for four months, or longer if the driver has previous convictions. (*Coffey*, at p. 1208; § 13353.3, subds. (b)(1), (2).)

The Vehicle Code governs the type of evidence the DMV may consider at an administrative per se suspension hearing and incorporates portions of the Administrative Procedures Act. (§§ 14100 et seq., 14112; *Miyamoto v. Dept. of Motor Vehicles* (2009) 176 Cal.App.4th 1210, 1216 (*Miyamoto*).) The DMV hearing officer "shall consider its official records and may receive sworn testimony." (§ 14104.7.) The hearing officer is not required to follow the technical rules of evidence and shall admit any relevant evidence that "is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs." (Gov. Code, § 11513, subd. (c); § 14112; *Miyamoto*, at p. 1216.) He or she may also consider evidence that would normally be excluded as hearsay for the limited purpose of supplementing or explaining other evidence. (Gov. Code, § 11513, subd. (d); § 14112; *Miyamoto*, at p. 1216.)

Where the driver files a petition for a writ of mandate disputing an administrative per se suspension, the superior court independently reviews the DMV's decision to determine whether it is supported by the weight of the evidence. (*Lake*, *supra*, 16 Cal.4th at p. 456.) On appeal, we apply a deferential abuse of discretion standard to any

10

contested evidentiary rulings and consider whether the superior court's findings are supported by substantial evidence. (*Id*. at p. 457; *Miyamoto*, *supra*, 176 Cal.App.4th at p. 1217.)

II. *Analysis*

### A. *Substantial Evidence Supports the Finding the Initial Stop was Lawful*

We turn first to Evans's assertion the initial traffic stop was unauthorized. A traffic stop is lawful if the officer conducting the stop has reasonable suspicion the driver is in violation of a Vehicle Code provision. (*People v. Watkins* (2009) 170 Cal.App.4th 1403, 1408.) Here, Officer White testified Evans was stopped because he was driving on a publicly maintained road open only to highway-legal vehicles with his off-road lights turned on in violation of section 24411, which requires off-road lights to be turned off and covered any time a vehicle "is operated or driven upon a highway."

Evans does not dispute that he was driving on Wash Road with his off-road lights on, but he contends Wash Road does not qualify as a highway because it is an unpaved dirt road inside an off-road recreational area with no posted speed limit or road markings. However, the Vehicle Code defines the term "[h]ighway" as "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel." (§ 360.) It does not require that the road be paved or have speed limit signs or other road markings. (*Ibid*.) And, in any event, Officer White testified that Wash Road did have one-way traffic signs, as well as stop signs at the entrance and exit points. The only evidence Evans offered to rebut Officer White's characterization of Wash Road as a

11

highway was the testimony of Pate, a lay witness with no special knowledge of the road, who conceded the road was hard-packed and accessible to non-off-road vehicles.

Evans also asserts the record does not support the DMV's finding the violation was a major concern because the lights were not actually impairing the vision of oncoming traffic at the time of the stop. The superior court did not rely on this finding in concluding the evidence supported the DMV's finding of reasonable cause to detain Evans. Regardless, Officer White's sworn testimony was sufficient to support the finding. Although the road was one-way at the point where Evans was stopped, Officer White testified it merged into two-way traffic shortly thereafter. Accordingly, it was reasonable for the officers to stop the vehicle before it entered the two-way traffic zone. (See *People v. Ellis* (1993) 14 Cal.App.4th 1198, 1201 [traffic stop in private parking lot valid where officer stopped driver to ensure he would turn his headlamps on before driving onto a public street].)

We therefore conclude substantial evidence supports the superior court's finding that the weight of the evidence supported the DMV's determination Evans was lawfully detained.

*B. Substantial Evidence Supports the Finding Evans was Driving with a Blood Alcohol Level of 0.08 Percent or More*

Next, Evans contends the DS-367 form indicates Officer White did not comply with the 15-minute observation period required by Title 17; the WildCAD dispatch log was inadmissible to cure this error; the breath test results are therefore inadmissible as

12

well; and the remaining evidence is not sufficient to support the determination he was driving with a blood alcohol level of 0.08 percent or more.

Title 17 sets forth regulations regarding the equipment and procedures used to test blood alcohol levels and mandates that breath alcohol testing be performed "only after fifteen continuous minutes during which time the subject must not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten, or smoked." (Cal. Code Regs., tit. 17, § 1221.1; *Molenda v. Dept. of Motor Vehicles* (2009) 172 Cal.App.4th 974.) The results of chemical breath tests are presumptively admissible to prove the driver's blood alcohol level "upon a showing of either compliance with Title 17 or the foundational elements of (1) properly functioning equipment, (2) a properly administered test, and (3) a qualified operator." (*People v. Williams* (2002) 28 Cal.4th 408, 417 (*Williams*); see also *People v. Adams* (1976) 59 Cal.App.3d 559, 561 [setting forth the foundational elements].)

Similarly, where, as here, an officer conducts a chemical breath test and records the results on a standard DS-367 form, attesting therein that "the test was administered pursuant to the requirements of Title 17 of the California Code of Regulations," the form creates a rebuttable presumption the test results are valid, reliable, and admissible. (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1232 (*Manriquez*); *Davenport v. Dept. of Motor Vehicles* (1992) 6 Cal.App.4th 133, 143 (*Davenport*); *Williams*, *supra*, 28 Cal.4th at p. 417; Evid. Code, § 664.) If the driver is able to make an affirmative showing that one or more of the requirements of Title 17 was not observed, however, the

13

burden shifts back to the DMV to prove the test was reliable despite the purported violation.  (*Manriquez*, at p. 1233; *Davenport*, at p. 143.)

Here, Evans contends Officer White did not comply with Title 17 because the DS-367 form indicates on its face that Officer White began observing Evans at 10:30 p.m. and the two chemical breath tests were taken less than 15 minutes later, at 10:41 and 10:44 p.m.  However, the form also contains an attestation of compliance with Title 17, signed by Officer White under penalty of perjury, and Officer White's testimony at the hearing, supported by the WildCAD dispatch record, indicates he did wait 15 minutes before conducting the chemical breath tests.  Officer White testified he was aware of the requirement that he observe Evans for 15 minutes before conducting the chemical breath tests and that the field sobriety tests he performed before the breath tests would have taken more than 15 minutes.  In addition, he stated the 10:30 p.m. time listed on the DS-367 form was an estimation, filled in after he transported Evans to the local ranger station, and that he could confirm the exact time he first contacted Evans by looking at the dispatch records.  After reviewing the WildCAD dispatch log, Officer White confirmed the traffic stop, and his observation of Evans, would have begun shortly before he provided Evans's information to the dispatcher at 10:24 p.m.  Using 10:24 p.m. as the start time, the two breath tests were conducted more than 15 minutes later, in compliance with Title 17.

Evans argues the hearing officer and the superior court should not have considered the WildCAD dispatch log because it was not properly authenticated.  We disagree.  Under the relaxed evidentiary standards applicable to the administrative hearing, the

14

hearing officer could consider any relevant evidence that "is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs." (Gov. Code, § 11513, subds. (c) & (d); § 14112; *Miyamoto*, *supra*, 176 Cal.App.4th at p. 1216.) There is no question the WildCAD dispatch log was relevant as it established the time of stop. Further, Officer White testified that it was a record of the radio traffic between himself and the dispatch center, entered into the CAD system by the dispatcher during the stop. Although he could not explain exactly how the dispatcher entered the information into the system or generated the report, his testimony indicates the report was a standard report commonly relied upon in such circumstances. (See Gov. Code, § 11513; *Miyamoto*, *supra*, 176 Cal.App.4th at p. 1216.) Moreover, the document on its face indicates it is a record of the Federal Interagency Communication Center, and the details of the report, such as the location of the stop, Officer White's call sign, and the sequence of events, are consistent with Officer White's testimony.

Evans also asserts the WildCAD dispatch log contained inadmissible hearsay. However, as the superior court pointed out, the report helped explain the discrepancy in the DS-367 form and Officer White's testimony, and could therefore be considered for the limited purpose of supplementing or explaining the other evidence. (Gov. Code, § 11513, subd. (d); *Hildebrand v. Dept. of Motor Vehicles* (2007) 152 Cal.App.4th 1562, 1569-1570 [hearsay statements in unsworn police report properly admitted to explain ambiguity in driver's statements during the traffic stop].)

Evans argues the WildCAD dispatch log did not explain the other evidence because the time in the WildCAD dispatch log was inconsistent with the DS-367 form

15

and Officer White could not recall the exact time of the stop. Evans misinterprets Officer White's testimony. Even before obtaining the WildCAD dispatch log, Officer White testified that the time of stop in the DS-367 form was an estimation and that he could verify the exact time by reviewing the dispatch records. Although he could not *independently* recall the exact time when he first contacted Evans, he consistently testified that he could confirm the exact time by reviewing the WildCAD dispatch log and, after reviewing the log, testified he must have contacted Evans before 10:24 p.m. Thus, the superior court did not abuse its discretion in concluding the WildCAD incident report could be considered to supplement and explain Officer White's sworn statement and associated testimony.

Considering Officer White's testimony at the hearing, the sworn statement in the DS-367 form, and the WildCAD log, the superior court concluded Officer White complied with Title 17. Substantial evidence supports that finding. As discussed, Officer White was aware of the 15-minute observation requirement, believed he spent at least 15 minutes conducting field sobriety tests with Evans before conducting the chemical breath tests, and certified under penalty of perjury that he complied with Title 17. Although he incorrectly estimated the time of the stop on the DS-367 form, the WildCAD dispatch log confirms he first contacted Evans before 10:24 p.m., and the DS-367 form and chemical breath test strip confirm he conducted the chemical breath tests at 10:41 and 10:44 p.m., more than 15 minutes later. Further, there is no dispute Officer White observed Evans during the field sobriety tests and there is no indication whatsoever that Evans ingested alcoholic beverages or other fluids, regurgitated, vomited, ate, or smoked during that

16

time.  (See *Manriquez*, *supra*, 105 Cal.App.4th at p. 1234 [observation period satisfied where officers could perceive whether subject ate, drank, smoked, vomited or regurgitated, even if officer did not maintain direct visual contact the entire time].)

Finally, since we have concluded substantial evidence supports the superior court's finding that Officer White complied with Title 17, we also conclude the superior court did not abuse its discretion in determining the results of the chemical breath test were admissible.[3]  (See *Manriquez*, *supra*, 105 Cal.App.4th at p. 1232; *Davenport*, *supra*, 6 Cal.App.4th at p. 143.)  The chemical breath tests results indicated Evans had a blood alcohol level of 0.16 and 0.15, respectively.  Therefore, substantial evidence also supports the finding that Evans was driving with a blood alcohol level of 0.08 percent or more.

DISPOSITION

The judgment is affirmed.

HALLER, Acting P. J.

WE CONCUR:

AARON, J.

GUERRERO, J.

---

[3]      Respondents assert the chemical breath test results were admissible even if Officer White did not comply with Title 17, other evidence suggests Evans was intoxicated, and policy considerations support the suspension.  As we have concluded substantial evidence supports the superior court's determination Officer White complied with Title 17, we need not and expressly do not reach these alternative arguments.

Filed 11/12/19

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KENNITH HAROLD EVANS,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>JEAN SHIOMOTO, as Director, etc.,<br><br>      Defendant and Respondent. | D073969<br><br>(Super. Ct. No.<br> 37-2017-00032144-CU-WM-CTL)<br><br><br>ORDER CERTIFYING OPINION<br>FOR PARTIAL PUBLICATION |

THE COURT:

The opinion in this case filed October 21, 2019, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED in part.

IT IS HEREBY CERTIFIED that the opinion meets the standards for partial publication specified in California Rules of Court, rule 8.1105(c), with the exception of part II.A.; and

_____

[*]     Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.A.

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

HALLER, Acting P. J.

Copies to:  All parties